9 P.3d 898 (2000)
EAGLE POINT CONDOMINIUM OWNERS ASSOCIATION, a Washington nonprofit corporation; The 1995 Wayne B. and Alice M. Watson Family Trust; Larry G. Waltrip and June Waltrip; Allan C. Koch; and Kenneth R. Koch, Respondents Cross-Appellants,
v.
Peter C. COY and Kristi Lovick Coy, husband and wife; Ronald B. Cunningham and Roger J. Korthuis, d*b*a "The Lake Whatcom Marina Partnership" and Brixx Design And Development, Inc., a Washington corporation, Appellants Cross-Respondents.
No. 44746-7-I.
Court of Appeals of Washington, Division 1.
September 18, 2000.
*901 Hal Thurston, Simonarson Visser Zender & Thurston, Bellingham, for Appellants.
William Knudsen, Bellingham, Howard Goodfriend, Catherine Smith, Edwards Sieh Smith & Goodfriend P.S., Seattle, for Respondents. *899
*900 BECKER, A.C.J.
A condominium association obtained judgment against a developer for breach of express and implied warranties under the Condominium Act, RCW ch. 64.34. Although the Association did not prove all of its claims, and refused a pretrial settlement offer greater than the net damages awarded at trial, the trial court did not err in finding the Association to be the prevailing party for purposes of awarding attorney fees under the statute. We affirm the judgment and remand for entry of findings and conclusions explaining the calculation of the fee award.

FACTS
The Eagle Point Condominiums are an eight-unit development on the south shore of Lake Whatcom. Peter Coy was the developer, seller, and declarant. He was also a one-third owner and president of Brixx Design and Development, the contractor that constructed the buildings. Between 1993 and 1994 five of the eight units were sold. The other three units are owned by Coy, who maintains them as rental properties.
The owners of the five units, following occupancy, complained about construction defects. Brixx responded by performing certain repair work under its one and two year warranties. Brixx did not remedy all complaints, and the quality of the repair work did not always satisfy the owners.
Brixx ceased doing business in 1995. Coy and the owners were unable to agree at that *902 time on what should be done to resolve the owners' remaining complaints. The Eagle Point Owners Association, together with several individual unit owners, sued Coy and Brixx in 1996. To document their damages, the Association retained a construction consultant. The consultant identified various problems which he attributed to defects in construction and installation. His report evaluated the total damages at approximately $750,000.
A mediation in November 1998 achieved a release of the Association's claims against Brixx in exchange for a payment of $65,000 to the Association. A four-day bench trial in February, 1999 resulted in a judgment on the claims against Coy under the Washington Condominium Act, RCW ch. 64.34. The court found Coy, as the declarant, liable to the Association for breach of express and implied warranties to the extent of $77,441. Two unit owners received individual judgments against Coy for $1,000 and $3,000.
Coy asked the court to offset the judgment against him by $65,000, the amount of the Brixx settlement. And both sides claimed to be entitled to an award of attorney fees as the prevailing party. At the court's request, the parties provided post-trial briefing on both issues. In findings and conclusions entered on April 28,1999, the court allowed Coy an equitable setoff of $55,000 for the Brixx settlement, for a net damage award to the Association of $22,441. The court found that the Association was the prevailing party in the lawsuit under the Condominium Act, and awarded $25,000 in attorney fees and $176 in statutory costs, for a total judgment of $47,617. Coy appeals the judgment in favor of the Association but not the judgments in favor of the individual owners. The Association cross appeals.

OFFSET
Both parties appeal the court's decision to offset the amount of the judgment by $55,000. The Association contends the offset was too large while Coy contends the court should have given him credit for the entire $65,000 Brixx paid in settlement. We review a trial court's decision to grant an offset for abuse of discretion. See Robinson v. McReynolds, 52 Wash.App. 635, 640, 762 P.2d 1166 (1988). A court abuses its discretion if its decision is not based on tenable grounds or tenable reasons. Layne v. Hyde, 54 Wash.App. 125, 135, 773 P.2d 83 (1989).
In setting off the Brixx settlement, the trial court's equitable purpose was to assure that the Association did not recover from both Brixx and Coy for the same damage. It is a basic principle of damages, both tort and contract, that there shall be no double recovery for the same injury. Public Employees Mut. Ins. Co. v. Kelly, 60 Wash. App. 610, 618, 805 P.2d 822, review denied, 116 Wash.2d 1031, 813 P.2d 582 (1991); Robinson, 52 Wash.App. at 639, 762 P.2d 1166.
According to the Association, the court lacked a tenable basis for the offset because the losses compensated by the award of damages against Coy were different from the losses compensated by the Brixx settlement. The Brixx warranty covered only those construction defects discovered within a period of one or two years. It also excluded coverage for features such as outbuildings, driveways, bulkheads, patios and landscaping. The Association takes the position that the claims on which it succeeded against Coy at trial either were for problems excluded by the terms of Brixx warranty or were discovered after the warranty period, and therefore were not within the ambit of Brixx's liability.
Arguably, some of the claims the Association proved against Coy could never have been proved against Brixx if Brixx had remained a defendant. But as the trial court found, the Association initially asserted all its claims against both Coy and Brixx, without any differentiation as to the party responsible. The parties to the Brixx settlement did not allocate it to any particular claim of damage. At the time of the Brixx settlement, Brixx had not litigated on any defense or legal theory that would have limited its potential liability for any or all of the damages claimed by the Association. The Association continued to assert the same claims against Coy after the settlement without any indication that any particular claim had been satisfied.
*903 To be able to separate out the claims for which Brixx had no liability, the trial court would have had to find the date each defect was discovered and to categorize each defect in terms of the Brixx warranty exclusions. At trial the Association did not present evidence in a way that would have enabled the court to make such findings; and it has not assigned error to the trial court's failure to make such findings. We therefore hold that the trial court was within its discretion to conclude that an offset was necessary as a matter of equity to ensure that the plaintiffs did not recover damages from both Coy and Brixx for the same defects.
Coy contends a complete setoff of the $65,000 Brixx settlement was necessary to avoid double recovery, and asserts there is no factual or legal basis supporting the court's reduction of that amount by $10,000.
The $10,000 reduction was for the claim of Richard Watson, one of the unit owners who joined in the lawsuit. Watson had an independent contract with Brixx to provide various upgrades to his unit. He claimed damages estimated by the Association at $10,000, arising out of the alleged failure of Brixx to install and adjust his interior doors properly. After finding that Watson's claim arose solely from his separate contractual agreement with Brixx, the court denied him any recovery against Coy.
Coy points to the lack of any evidence that part of the settlement with Brixx went to satisfy Watson's claim. But whether or not Watson actually received an allocation of the Brixx settlement is irrelevant. The relevant fact is that the judgment against Coy did not include damages for the defects in Watson's unit. Because there was no danger of a double recovery for those defects, it was not inequitable to reduce the offset by the amount of Watson's damage.
The ruling granting Coy an offset of $55,000 is affirmed.

EVIDENCE OF DAMAGE
Coy contends there is insufficient evidence to support the court's findings as to the cost of certain repairs.
A party who has established the fact of damage will not be denied recovery on the basis that the amount of damage cannot be exactly ascertained. Barnard v. Compugraphic Corp., 35 Wash.App. 414, 417, 667 P.2d 117 (1983) (damage award upheld although damages caused by faulty machine were not segregated from damages from other causes). "Damages must be supported by competent evidence in the record; however, evidence of damage is sufficient if it affords a reasonable basis for estimating the loss and does not subject the trier of fact to mere speculation or conjecture." Interlake Porsche & Audi Inc. v. Bucholz, 45 Wash. App. 502, 510, 728 P.2d 597 (1986), review denied, 107 Wash.2d 1022 (1987) (citations omitted). In this case, the court made its own rough estimates of damage in some instances rather than accepting either party's estimate. We find the evidence provided a reasonable basis for the court's estimates.
Gutters and Soffits
The consultant hired by the Association estimated $15,500 as the aggregate cost to repair the gutters and replace the soffits with different material. The contractor testifying on Coy's behalf agreed that some work needed to be done, but only on the gutters. He estimated that the repair would cost about $1,500. The court found Coy liable for repairing the gutters but not for replacing the soffits, and awarded $5,000. Coy asserts that the record supports an award of no more than $1,500, while the Association argues that the award should have been $15,500 because repairing the gutters necessarily involved replacing the soffits.
The testimony that the Association relies on discusses the necessity of replacing the gutters if the soffits are replaced. There was no testimony to the effect that repairing the gutters means replacing soffits. Therefore, awarding damages to repair only the gutters was not error. The court was not obliged to fix the cost of gutter repair at $1,500, especially since the witness who offered the $1,500 estimate said it was not a firm estimate. But the court could rely on the low estimate as evidence that most of the Association's lump sum bid was for soffit *904 replacement. Thus, the record reflects that the cost to repair the gutters was between $1,500 and $15,500, and that the cost was closer to $1,500 than to $15,500. The award of $5,000 was a reasonable estimate within those parameters, and is affirmed.
Siding, Flashing and Trim
The consultant for the Association presented an estimate of $28,226 to repair the siding, and an aggregate estimate of $34,174 to replace the flashing and trim. Coy's estimate was $24,000 for the siding only. The court found that defects in the siding and flashing amounted to a breach of warranty, and awarded $43,000 for the siding and flashing repairs together, but nothing to replace the trim boards. Coy contends there was no evidence of the cost of flashing repair, and asks that the award be reduced to no more than $28,226 for the siding only. The Association, on the other hand, claims that replacing the flashing necessarily required replacement of the trim due to the water infiltration caused by the defective siding, and the award must necessarily be increased to $62,400.
The court did not err in refusing to award damages for the trim. There was evidence of water damage to the trim boards. But the Association did not claim that the water damage was a breach of warranty; rather, the sole claim with respect to the trim was that the choice of material was a breach of warranty. The court found that there was no warranty for a particular material in the trim boards and that finding has not been appealed. And there was no testimony that the repair of the siding and flashing would require the trim to be replaced.
The estimate of $34,174 for flashing and trim provided the court with a reasonable basis to estimate that the cost for flashing alone was about half that amount. The award of $43,000, for flashing and siding together, is in the range of the evidence and is affirmed.
Dock Railings
Under the condominium statute, the developer warrants that structures will be constructed in compliance with the law. RCW 64.34.455. The Association asks to have the damage award increased by $2,800 to include the cost of installing dock railings. The Association contends that the evidence was undisputed that the dock permit as approved by Whatcom County required railings. The record, however, does not show that the Association presented any evidence of county requirements, disputed or undisputed. Therefore, the court's decision not to award damages for dock railings is affirmed.

ATTORNEY FEESPREVAILING PARTY
Coy appeals the trial court's award of prevailing party attorney fees of $25,000 to the Association under the Condominium Act.
The statute grants the court discretion to award attorney fees to the prevailing party "in an appropriate case":
If a declarant or any other person subject to this chapter fails to comply with any provision hereof or any provision of the declaration or bylaws, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief. The court, in an appropriate case, may award reasonable attorney's fees to the prevailing party.
RCW 64.34.455.
The primary issue raised by Coy's appeal from the award of attorney fees is whether the court misidentified the prevailing party.
The determination of the prevailing party is often reviewed quite closely on appeal, and at least one court has described it as a mixed question of law and fact to be reviewed under the error of law standard. Sardam v. Morford, 51 Wash.App. 908, 911, 756 P.2d 174 (1988).
As a general rule, a prevailing party is one against whom no affirmative judgment is entered. Andersen v. Gold Seal Vineyards, Inc., 81 Wash.2d 863, 868, 505 P.2d 790 (1973). A defendant can be awarded fees as a prevailing party under the Condominium Act. Cf. Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 822-23, 828 P.2d 549 (1992) (interpreting similar provision in the Shoreline Management Act). *905 But if one looks only to the affirmative judgment in this case, the prevailing party is the Association, not Coy; judgment was entered against Coy, and no judgment was entered against any of the plaintiffs.
Coy contends, however, that a party who rejects a pretrial settlement offer cannot be a prevailing party for purposes of awarding attorney fees if the net recovery after trial is less than the rejected offer. Pretrial, Coy submitted a CR 68 offer of net judgment for $40,000 ($105,000, less an offset of $65,000 for the Brixx settlement). The Association did not respond. The Association's net recovery at trial, after the offset and before the award of attorney fees and costs, was $22,441.
If a party does not accept a timely CR 68 offer of judgment and then obtains a judgment at trial for less than the amount offered, then that party must pay the offeror's costs incurred after the making of the offer. CR 68. A further consequence, under Tippie v. Delisle, is that such an offeree cannot be a prevailing party under RCW 4.84.030 (the statute mandating an award of costs to a prevailing party) even though the offeree is otherwise the prevailing party by virtue of obtaining an affirmative judgment. Tippie v. Delisle, 55 Wash.App. 417, 777 P.2d 1080 (1989), review denied, 114 Wash.2d 1003, 788 P.2d 1078 (1990). See also Stout v. State, 60 Wash.App. 527, 528, 803 P.2d 1352 (1991) (plaintiffs who obtained verdicts for damages that were more than offset by a prior settlement did not receive an affirmative judgment, did not prevail and therefore could not recover costs).
CR 68 and Tippie do not speak to the determination of prevailing party for the purpose of awarding attorney fees because CR 68 is a cost-shifting device, not a fee-shifting device. Attorney fees are not included in the "costs" that can be shifted under CR 68, unless the governing statute specifically defines attorney fees as costs. See Sims v. Kiro, Inc., 20 Wash.App. 229, 238, 580 P.2d 642 (1978); Ducolon Mechanical, Inc. v. Shinstine/Forness, Inc., 77 Wash.App. 707, 715, 893 P.2d 1127 (1995). The condominium statute does not define attorney fees as costs. Coy nevertheless seeks to extend the rationale of Tippie and establish that rejection of a pretrial settlement offer will cut off the offeree's right to prevailing party status as to fees as well as costs if the result at trial does not improve on the offer.
The case Coy points to as authority for embracing the Tippie principle in fee awards is Richter v. Trimberger, 50 Wash.App. 780, 750 P.2d 1279 (1988). In that case, Richter worked on Trimberger's fishing vessel; they agreed that the value of Richter's work, over time, would be converted into an ownership interest in the vessel. Trimberger signed a promissory note for $50,000, with an attorney fee provision. When the parties had a falling out, they agreed that $12,000 was the value of the work performed by Richter up to that point. Trimberger promptly gave Richter a check for that amount, but Richter refused it. Five years later, Richter sued for $50,000 on the promissory note. Trimberger resisted the claim on the note but again tendered payment for the value of the work performed, by depositing $12,200 with the clerk of the court. The trial court rejected Richter's claim based on the note, but entered judgment in his favor for $12,000. Richter sought an award of attorney fees as the prevailing party in a suit brought on the note. The trial court, however, awarded fees to Trimberger after finding him to be the prevailing party, even though Richter was technically "the party in whose favor final judgment is rendered." RCW 4.84.330. This court affirmed, stating that Richter "did not achieve anything at trial that had not been offered to him prior to trial; therefore, he was not the prevailing party." Richter, 50 Wash.App. at 784, 750 P.2d 1279. Coy argues that the Association, similarly, did not achieve anything at trial beyond what he offered prior to trial, and on that account he is the prevailing party even though final judgment was rendered in favor of the Association.
Richter does not establish the broad limitation on fee-shifting that Coy seeks to employ through the device of his rejected offer. The result in Richter was dependent on the facts of the case. Richter had agreed from the beginning that $12,000 was the value of *906 the work he performed. Because Trimberger promptly offered him $12,000 when their dispute arose, Richter "was never denied the use of that money." Richter, 50 Wash.App. at 784, 750 P.2d 1279. The only dispute resolved by the trial was whether Trimberger owed anything on the note.
In this case, by contrast, the condominium owners' complaints about the quality of the construction were not resolved by early agreement. They maintained their lawsuit at considerable expense, including not only attorney fees but also the fees paid to their consultant, for over two years before Coy made his $40,000 offer of judgment. To impose the Richter result in these circumstances would be unjust. The attorney fees incurred in litigating small but meritorious consumer claims often exceed the value of the claim itself. It would be a substantial disincentive to making such claims if the defendant could disable the plaintiff from recovering attorney fees simply by waiting until the eve of trial to offer what the claim is worth.
We come to the same result by the alternate route of showing that Coy is mistaken in his contention that the Association failed to improve upon the rejected offer of $40,000. Coy contends the relevant figure for comparison is the Association's net damage award of $22,441. But the court entered judgment in favor of the Association for $47,617. That judgment included the award of $25,000 in attorney fees. To exclude the attorney fees from the calculation would be inconsistent with the Supreme Court's determination of the prevailing party on similar facts in Schmidt v. Cornerstone Investments, 115 Wash.2d 148, 795 P.2d 1143 (1990).
In that case, the Schmidts sued Cornerstone and other defendants alleging various claims including fraud and violations of the Consumer Protection Act. The jury's award combined with the award of attorney fees was $217,196.70, but the final judgment was for $67,196.70, after an offset of $150,000 for the reasonable value of a prior settlement. Like Coy, one of the defendants argued the plaintiffs should not have been awarded any fees or costs under the Consumer Protection Act because they were not the prevailing parties in the action. He based his argument on the fact that the $150,000 reasonableness amount exceeded the sum of the judgment against him prior to calculating in attorney fees and costs. The Supreme Court, however, held it was proper, in determining whether the plaintiffs had prevailed, to include the award of attorney fees in the judgment before subtracting the offset. The plaintiffs had prevailed on their Consumer Protection Act claim. One who successfully brings an action under the act is entitled to attorney fees and costs. "Plaintiffs were entitled to fees and costs under the act regardless of whether the reasonableness figure rendered at the hearing exceeded the jury's award on these claims." Schmidt, 115 Wash.2d at 164, 795 P.2d 1143.
Under Schmidt, the correct way to calculate the Association's recovery is to begin with the amount of damages proved ($77,441), add the attorney fees ($25,000) the trial court found appropriate to award under the Condominium Act, and the statutory costs ($176), and then subtract the $55,000 offset for the Brixx settlement. The result is $47,617the amount of the final judgment. By this calculation, the Association did improve upon Coy's offer of $40,000.
On this record, we need not decide whether prevailing party status should be denied to a party who fails to improve at trial upon a pretrial offer including attorney fees as well as damages. Under the circumstances presented here, the Association's rejection of Coy's pretrial offer was not a pertinent factor in the determination of the prevailing party, and the trial court correctly disregarded it.
We next consider Coy's argument that he was the prevailing party with respect to the claims the Association failed to prove. Coy contends that he was the prevailing party under the proportionality approach set forth by this court's decision in Marassi v. Lau, 71 Wash.App. 912, 859 P.2d 605 (1993). Marassi recognizes the unfairness of designating a plaintiff as the prevailing party for having obtained an affirmative judgment on one or more claims, when the defendant has successfully defended against *907 other claims. Marassi, 71 Wash.App. at 916-17, 859 P.2d 605. "We hold that when the alleged contract breaches at issue consist of several distinct and severable claims, a proportionality approach is more appropriate." Marassi, 71 Wash.App. at 917, 859 P.2d 605. In such a case, the court awards fees to the plaintiff for the claims the plaintiff prevails on, awards fees to the defendant for the claims he prevails on, and offsets the difference. See JDFJ Corporation v. International Raceway, Inc., 97 Wash.App. 1, 8, 970 P.2d 343 (1999).
The construction consultant retained by the Association produced a report in 1998 identifying 33 warranty violations, and estimating the cost of repair to exceed $750,000. In 1999, just before trial, the consultant produced a revised report which reduced the number of alleged violations. The claims the Association pursued at trial were based on the new damage estimate of approximately $375,000. The court found Coy responsible for breach of warranties pertaining to installation of parking and walkway lights; drainage behind a bulkhead; construction of a dock; installation of gutters; installation of decks; installation of siding and flashing; and exterior lighting fixtures. But Coy successfully defended against many other items in the revised report. The court rejected the Association's claims that Coy breached warranties pertaining to completion of landscaping; construction of a fence; patio and walkway finishes; soffit material; trim material; installation of utility wiring; and a damaged underground cable. Although one owner obtained a judgment for a view easement, and the Association claims its litigation achieved the removal of an old and unattractive rental unit from the property, the value of such relief does not appear in the record. The monetary damages the Association was able to prove totaled $77,441, far less than their consultant's estimates. Coy contends this situation presents a classic case for the application of Marassi and that he, not the Association, is entitled to an award of attorney fees because the Association lost or abandoned more than it won.
To date, this court has required trial courts to use the proportionality approach of Marassi only in cases where a contractual provision mandates an award for attorney fees to the prevailing party. In this case, the purchase and sale agreements between the unit owners and Coy did include such a provision. Both sides mentioned the purchase and sale agreements, along with the Condominium Act, as an alternative basis for an award of fees. Coy claims he is entitled to have the prevailing party determined under the contractual provision, but has not shown why or by what authority this court should disturb the trial court's decision to award fees under the Condominium Act instead. This case requires us to decide whether trial courts must use the Marassi proportionality approach in cases involving multiple, severable claims where the authority to award fees comes not from a private contract, but from a statute.
In deciding this issue we are guided by the Supreme Court's recent decision in Brand v. Department of Labor and Indus., 139 Wash.2d 659, 989 P.2d 1111 (1999). The court emphasized the importance of identifying the purpose of the fee-shifting statute as a central consideration in deciding how to apply it. Brand, 139 Wash.2d at 667, 989 P.2d 1111. The court looked at the statutory scheme, and the historically liberal interpretation of the Industrial Insurance Act, and recognized that the purpose behind the award of attorney fees allowed in RCW 51.52.130 is to ensure adequate representation for the injured worker who must appeal from the ruling of the Department of Labor and Industries in order to obtain all compensation due on the claim. Brand, 139 Wash.2d at 667-670, 989 P.2d 1111. In light of these considerations, the court held it was inappropriate to reduce an attorney fee award to account for a worker's limited success. Brand, 139 Wash.2d at 670-71, 989 P.2d 1111.
Whereas the statute at issue in Brand provides for an award of fees only when the worker or beneficiary prevails, in an action brought under the Condominium Act either the plaintiff or the defendant may be the prevailing party and receive, in an appropriate case, an award of attorney fees. The fee-shifting provision in RCW 64.34.455 *908 thus serves the general purpose of most fee-shifting statutes, which is to punish frivolous litigation and to encourage meritorious litigation. See Brand, 139 Wash.2d at 667, 989 P.2d 1111. But the Act also directs the courts to administer its remedies liberally "to the end that the aggrieved party is put in as good a position as if the other party had fully performed." RCW 64.34.100. A statute's mandate for liberal construction includes a liberal construction of the statute's provision for an award of reasonable attorney fees. Progressive Animal Welfare Society v. University of Washington, 114 Wash.2d 677, 683, 790 P.2d 604 (1990).
The Condominium Act attests to the public interest in quality construction of condominiums, financially responsible transactions involving condominiums, and ongoing upkeep of the condominium units and common areas. The Act also has a strong consumer protection component. Section 4 is entitled "Protection of Condominium Purchasers". Laws of 1989, ch. 43, § 4-1115. It includes guarantees of express and implied warranties of quality and it creates a special cause of action for breach of those warranties. See RCW 64.34.443-452. We therefore conclude the fee shifting provision, also placed in section 4, reflects a legislative purpose to ensure adequate representation for aggrieved purchasers of condominiums, and to encourage private action to enforce the act's guarantees. See Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 595, 675 P.2d 193 (1983) (fee-shifting provision in Consumer Protection Act is intended to encourage active enforcement of the underlying statute).
To require trial courts to follow Marassi when awarding attorney fees under the Condominium Act to aggrieved purchasers would frustrate the statutory goal of putting them in as good a position as if the defendant had fully performed. It would undermine the statutory purpose of encouraging active enforcement of the warranties. And such a requirement would be inconsistent with the broad discretion afforded by the statute to the trial court to decide whether an award of fees is "appropriate" in a particular case. For these reasons, we will not require trial courts to use the proportionality approach described in Marassi in awarding fees under RCW 64.34.455.[1]
We hasten to add that an award of fees under the Condominium Act, unlike the workers' compensation statute discussed in Brand, may, in the court's discretion, be reduced on account of the prevailing party's limited success. It may also be discounted by the amount of fees attributable to counsel's work on unsuccessful claims distinct from, and unrelated to, work done on behalf of the successful result. Cf. Brand, 139 Wash.2d at 671-673, 989 P.2d 1111. It is likely that such considerations entered into the trial court's decision in this case to award only $25,000 when the actual fees charged to the Association were in excess of $35,000. We hold only that the court was not obliged to declare Coy the prevailing party as to the claims he successfully defended. He is not an "aggrieved party" under the Act. See RCW 64.34.100.
Coy then challenges the court's determination that this was "an appropriate case" for an award of fees to the Association. After the trial, the court asked the parties to provide information about their settlement attempts, as a consideration in deciding whether to award fees. Coy agreed this was a relevant consideration. He asked the trial court to weigh it in his favor because the plaintiffs' pretrial estimates of their damages were much higher than the damages they eventually proved at trial, and because the plaintiffs did not respond to his offers and did not make a formal offer of their own. He asked the court to consider also the fact that as owner of three out of the eight units he was being taxed for a sizable share of the fees devoted to the suit against him.
This court will not disturb discretionary awards of attorney fees unless the *909 trial court abused its discretion. In re Marriage of Crosetto, 82 Wash.App. 545, 563, 918 P.2d 954 (1996) (discretionary award under RCW 26.09.140); Schmerer v. Darcy, 80 Wash.App. 499, 509, 910 P.2d 498 (1996) (award under RCW 4.84.185). Coy's argument was not without merit, but the trial court also considered that the owners had to incur substantial professional fees in order to enforce their warranties against the declarant, and that Coy's offers were unreasonably low. These considerations provided a tenable basis for the court's discretionary decision that the case was "appropriate" for an award of fees to the Association as prevailing party.
In summary, the trial court did not err in finding the Association to be the prevailing party for purposes of awarding fees under the Condominium Act, and did not abuse its discretion in finding the case to be an appropriate one for an award of fees.

ATTORNEY FEESREMAND FOR FINDINGS
Coy appeals the award of $25,000 in attorney fees to the Association on the additional basis that the court entered no findings in support of the amount of the award. Coy does not question the hourly rates charged, and he does not allege duplication or waste. His sole concern is that the court simply announced a number.
To withstand appeal, a fee award must be accompanied by findings of fact and conclusions of law to establish a record adequate for review. Mahler v. Szucs, 135 Wash.2d 398, 433-35, 957 P.2d 632 (1998); see also Brand, 139 Wash.2d at 664, 674, 989 P.2d 1111. On this topic the court's findings and conclusions in this case are entirely conclusory.
The appellate courts exercise a supervisory role to ensure that discretion is exercised on articulable grounds. Mahler, 135 Wash.2d at 434-35, 957 P.2d 632. Following Mahler, we vacate the award of attorney fees and remand for entry of findings and conclusions to explain how the court arrived at the figure of $25,000.

ATTORNEY FEES ON APPEAL
Both parties request attorney fees on appeal under the Washington Condominium Act fee provision, RCW 64.34.455. Where a statute authorizes fees to the prevailing party, they are available on appeal as well as in the trial court. Ur-Rahman v. Changchun Dev. Ltd., 84 Wash.App. 569, 576, 928 P.2d 1149 (1997). The Association has prevailed against Coy's appeal but has not gained any relief by its cross appeal. We exercise our discretion to award to the Association such fees as are reasonably attributable to defending the judgment on appeal.
Except for remand of the fee award, the judgment is affirmed.
COX, J., and KENNEDY, J., concur.
NOTES
[1] Coy did not cite Marassi v. Lau, 71 Wash.App. 912, 859 P.2d 605 (1993) to the trial court in arguing below for prevailing party status. Because Marassi itself does not suggest that a party must make a Marassi argument below in order to preserve it on appeal, and the Association has not argued otherwise, we have addressed the argument on the merits.