# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| NEAL and MARILYN McINTOSH, husband and wife; RON and JEANINE ARNSBERG, husband and wife; SALLY BARLOW, an individual; DON and CAROL BRENNAN, husband and wife; GEORGIA BROUILLETTE, an individual; JUNE DAVIDSON, an individual; MIKE and DENICE DITTERICK, husband and wife; ELMA JEAN EDWARDS, an individual; KEN and PAT EISENBEIS, husband and wife; KENNETH and UTHA FOX, husband and wife; ALAN and SHERYLE FULLER, husband and wife; KEITH and DARLENE GARNER, husband and wife; DENNIS and ALICE GEORGE, husband and wife; RICHARD and GINNY GILBERT, husband and wife; LOIS GROSZ, an individual; ROBERT and SANDI HARDAWAY, husband and wife; JERRY and VERL HENDERSON, husband and wife; CONRAD and JACKLYN HINKLE, husband and wife; PHIL and SHARON HURD, husband and wife; TERRIL JOHNSON, an individual; EDWARD and TRACEY KEIRNS, husband and wife; WALT and JUDY KUEHITHAU, husband and wife; DUANE LAFORE, an individual; RUSS and SHARON LUNAU, husband and wife; JOHN and BARBARA MADDOCK, husband and wife; BILL and THERESA MARTIN, husband and wife; DON McCANN, an individual; HAL and KAY McEWEN, husband and wife; ELEANOR NEWTON, an individual; ERNIE and MARY ANNE READ, husband and wife; | No. 46964-2-II

UNPUBLISHED OPINION |

MEL and GILL RICHARDSON, husband and wife; YVONNE RICHTER, an individual; JERRY and NANCY SAMESHIMA, husband and wife; DANIEL and HELGA SANTOS, husband and wife; NORMA SHERIDAN, an individual; THEO and MARRY SLUYS, husband and wife; JEANETTE STATKUS, an individual; CURTIS and ELSIE STOUT, husband and wife; LYLE and DONA SUNDSMO, husband and wife; ROLLIE and BILLIE TILSTRA, husband and wife; JOANNE VanGORDER, an individual; ROY VASERENO, an individual; and REESE and EDITH WYMAN, husband and wife,

Respondents,

v.

AZALEA GARDENS LLC, d/b/a Azalea Gardens Mobile Home Park,

Appellant.

JOHANSON, C.J. — This dispute arises from a contract claim regarding whether Neal McIntosh and several other mobile home park tenants (collectively Tenants) are contractually obligated to reimburse Azalea Gardens, LLC (the owner of the mobile home park) for the cost of sealant applied to the mobile home community's roads. The dispute centers on the term "capital improvement" in the parties' lease. The trial court ruled in favor of the Tenants. Azalea appeals the trial court's conclusion of law 14, which defines "capital improvement" and contends that this conclusion (1) went beyond the scope of the dispute, (2) is not supported by the findings of fact, and (3) improperly conflicts with the trial court's other conclusions of law. We conclude that the trial court properly resolved the meaning of the term "capital improvement" as used in the parties' lease and properly awarded attorney fees to Tenants. We affirm.

2

FACTS

I. BACKGROUND

The Tenants are owners of manufactured homes and the lessees of lots in Azalea Gardens Manufactured Housing Community in Graham. Each of the Tenants has either a 20-year or 25-year fixed term lease.

Advertising material used to attract prospective tenants to the park stated that the Tenants did not have to pay for "'[m]aintenance of streets'" and other items and pointed out that such a provision was a benefit of long-term lot leases. Clerk's Papers (CP) at 453 (alteration in original). But the Tenants' leases do not expressly state who pays the expense of maintaining the roads in the park or of any other park maintenance.

In 2006, Azalea paid a contractor to seal coat and repair a portion of the roads in the Azalea Gardens park. Seal coating and filling in cracks that have developed in the road are part of the routine maintenance of asphalt roads. Azalea did not charge the Tenants for the 2006 work.

In 2011, Azalea again seal coated the asphalt roads in Azalea Gardens. But this time, Azalea charged $20,415.59 to the Tenants, or $210.47 per tenant, for the seal coating, asphalt repair, and repainting of the stripes. Some Tenants questioned whether seal coating the roads and other work done was a "capital improvement" or simply maintenance. Azalea responded that in the business of real estate investments and property management, the determination of expenses as being either "maintenance" or a "capital improvement" is generally determined by Internal Revenue Service (IRS) guidelines and taxpayers were generally required to capitalize expenses that substantially prolong the life of the property.

The Tenants paid the amount charged by Azalea and then filed an action to recover the amounts paid, contending that the work performed was maintenance and not a capital improvement.[1]

At trial, witnesses testified consistently with the facts discussed above. Following the bench trial, the trial court issued its decision. In relevant part, the trial court concluded that

9. [a] "capital improvement" as that term is used in the leases refers *not to repairs or maintenance*, but in the sense or similar to usage in IRS regulations, i.e., to *improvements of a capital nature*, *such as new buildings, facilities, permanent improvements, or betterments made to increase the value of property.*

10. The distinction between the two concepts is frequently expressed in terms of whether the expenditure in question "keeps" or "puts" the asset into its ordinary operating condition. If the expenditure "keeps" the asset in its ordinary operating condition, the expenditure is considered an expense for maintenance and repair. If the expenditure "puts" the asset into its ordinary operating condition, then the expense is of a capital nature.

. . . .

13. A capital improvement mandated by a government agency, however, need not relate to a new capital improvement.

14. The portion of paragraph 2 of the leases, as quoted in Finding of Fact No. 7, is ambiguous, in that it is sometimes difficult to determine whether an expenditure is for a "capital improvement" or not. Due to that ambiguity, and others in paragraph 2, which the Court must construe against the Landlord as drafter of the leases, and the context in which the leases were negotiated and signed, *the Court concludes that a "capital improvement" as used in the leases refers to a new capital improvement, and not the replacement or repair of an existing capital improvement.*

. . . .

17. Even in the absence of any provision in the leases regarding maintenance, the Landlord has a statutory duty to "[m]aintain the common

---

[1] The Tenants' alleged breach of lease and other claims that Azalea answered with affirmative defenses and counterclaims for declaratory judgments. Each party moved for summary judgment on the others' claims and, in an opposition motion, the Tenants claimed Azalea was responsible for the seal coating under the Manufactured/Mobile Home Landlord-Tenant Act (MHLTA), ch. 59.20 RCW, RCW 59.20.130. The court dismissed one of the Tenants' claims with prejudice and denied both parties' motions for summary judgment on the breach of lease claims. The Tenants' claim for breach of lease, consideration of Azalea's duties under the MHLTA, and Azalea's counterclaims for declaratory relief proceeded to trial.

premises." RCW 59.20.130(1). Roads are common premises, as they are used by all the tenants in common. The park owner also has the specific duty to "[m]aintain roads within the mobile home park in good condition[.]" RCW 59.20.130(9).

CP at 457-58 (emphasis added) (alterations in original).

On November 26, 2014, the trial court entered judgment awarding reimbursement for the seal coating costs to the Tenants and dismissed all of Azalea's counterclaims with prejudice.

### III. ATTORNEY FEES

After trial, the Tenants' counsel requested attorney fees of $39,795 based on a $350 hourly rate with a 1.25 multiplier. In support of the requested award, the Tenants' counsel submitted a three-page declaration, eight pages of his billing records, and a six-page motion explaining the fee request. The Tenants' counsel did not specify how much time was spent on an unsuccessful Consumer Protection Act (CPA), ch. 19.86 RCW, claim. Tenants' counsel did, however, state in his attorney fee motion that he was not claiming time spent on the CPA claims. Azalea made several objections to the Tenants' fee request, including that the fees should be denied because both parties prevailed on major issues.

The trial court later entered findings of fact that the Tenants were the prevailing parties and that paragraph 27 of the leases provides for attorney fees to the prevailing party in litigation under the leases.

The trial court entered the following conclusions of law with respect to the award of attorney fees:

> 1. Plaintiffs are the prevailing parties in this litigation, and as prevailing parties are entitled to costs and reasonable attorney's fees.
> . . . .
> 3. Plaintiffs' counsel reasonably spent 106.95 hours in connection with this litigation.

     4. Plaintiffs' counsel's hourly rate of $350 is reasonable for his expertise, his level of experience and the quality of his work.
     5. The lodestar fee is $37,432.50.
     6. The lodestar fee is a reasonable fee in light of the result obtained, the factors listed in RPC 1.5(a) and the totality of the circumstances.

CP at 498.

In its oral ruling, the trial court denied the requested 1.25 multiplier, analyzed the fees relating to the unsuccessful CPA claim, tax law research, and counsel's charges for driving time from Seattle to Tacoma or Graham. The trial court awarded the Tenants $37,432.50 of the $39,795.00 in lodestar fees originally requested.

Azalea appeals.

## ANALYSIS

### I. Capital Improvement

Azalea contests the trial court's definition of "capital improvement" as found in conclusion of law 14. Azalea makes three arguments: (1) the trial court exceeded the scope of the case, (2) conclusion of law 14 is not supported by the trial court's findings, and (3) conclusion of law 14 conflicts with the trial court's other conclusions. We reject Azalea's contentions.

### A. Standard of Review

Unchallenged findings of fact are verities on appeal. *Humphrey Indus., Ltd. v. Clay Street Assocs., LLC*, 176 Wn.2d 662, 675, 295 P.3d 231 (2013). We make all reasonable inferences from the facts in the Tenants' favor as the prevailing party below. *Scott's Excavating Vancouver, LLC*

*v. Winlock Props., LLC*, 176 Wn. App. 335, 342, 308 P.3d 791 (2013), *review denied*, 179 Wn.2d 1011 (2014).

An unchallenged conclusion of law becomes the law of the case. *Nguyen v. City of Seattle*, 179 Wn. App. 155, 163, 317 P.3d 518 (2014). We review conclusions of law de novo. *Sunnyside Valley Irr. Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). But if an appellant like Azalea challenges conclusions of law not based on the law itself, but rather by claiming that the findings do not support the court's conclusions, appellate review is limited to determining whether the trial court's findings are supported by substantial evidence and, if so, whether those findings support the conclusions of law. *Am. Nursery Prods., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 222, 797 P.2d 477 (1990); *Willener v. Sweeting*, 107 Wn.2d 388, 393, 730 P.2d 45 (1986).

## B. SCOPE OF REVIEW

First Azalea contends that the court exceeded the scope of the case because the parties did not dispute the definition of "capital improvement" at trial. We conclude that conclusion of law 14 did not exceed the trial court's scope of review at trial.

Azalea does not challenge the findings of fact on appeal and, thus, they are considered verities. *Humphrey Indus., Ltd.*, 176 Wn.2d at 675. Finding of fact 7 lays out paragraph two of the parties' leases, which states that the Tenants will compensate Azalea for "'funds expended on capital improvements either mandated by a governmental entity or deemed necessary by Owner.'" CP at 453. The trial court found that Azalea decided to seal coat the roads in the park and that the

Tenants questioned whether this work was a "capital improvement" or just maintenance.[2] The trial court found Azalea responded to the Tenants that in real estate investment or property management, "determination of expenses as being either 'maintenance' or a 'capital improvement' is generally determined by IRS guidelines" and that it would depreciate the project over time "pursuant to 'IRS code.'" CP at 454. The trial court also noted that Azalea asserted that a capital improvement was anything "that substantially prolong[s] the life of property." CP at 454. Finally, the trial court noted that the Tenants contended that the road work performed in 2011 was "maintenance, and not a capital improvement." CP at 455.

Accordingly, the trial court did not exceed the scope of the trial because the findings clearly show that the parties disputed the meaning of the lease term "capital improvement" and whether the seal coating at issue fell under that term.

C.  CONCLUSION OF LAW 14 IS SUPPORTED BY THE TRIAL COURT'S FINDINGS OF FACT

Next, Azalea claims that the trial court's findings do not support its conclusion of law 14. We disagree.

The unchallenged findings of fact on appeal are considered verities, which we review to ascertain whether they support conclusion of law 14. *Humphrey Indus., Ltd.*, 176 Wn.2d at 675. Where a trial court erroneously labels a finding of fact as a conclusion of law, we review it as a finding of fact. *Scott's Excavating*, 176 Wn. App. at 342. If a determination concerns whether

---

[2] Finding of fact 17 states, "Tenants questioned whether the work was needed, when the roads appeared to be in good condition," while finding of fact 19 states, "Tenants questioned whether seal coating the roads and the other work was a 'capital improvement' or simply maintenance." CP at 454.

evidence shows that something occurred, it is a finding of fact. *Casterline v. Roberts*, 168 Wn. App. 376, 382-83, 284 P.3d 743 (2012).

The goal of construing a contract is to determine and to effectuate the parties' mutual intent. *Hall v. Custom Craft Fixtures, Inc.*, 87 Wn. App. 1, 7, 937 P.2d 1143 (1997). If a contract remains ambiguous after examining extrinsic evidence, the contract will be construed against the drafter. *Rouse v. Glascam Builders, Inc.*, 101 Wn.2d 127, 135, 677 P.2d 125 (1984).

Azalea contends that the trial court's findings do not support its conclusion of law 14 that says,

> The portion of paragraph 2 of the leases, as quoted in Finding of Fact No. 7, is ambiguous, in that it is sometimes difficult to determine whether an expenditure is for a "capital improvement" or not. Due to that ambiguity, and others in paragraph 2, which the Court must construe against the Landlord as drafter of the leases, and the context in which the leases were negotiated and signed, *the Court concludes that a "capital improvement" as used in the leases refers to a new capital improvement, and not the replacement or repair of an existing capital improvement.*

CP at 458 (emphasis added). We look to the court's findings to determine if the findings support the court's conclusion. *Am. Nursery Prods., Inc.*, 115 Wn.2d at 222.

Here, the trial court found that "[t]he leases do not mention who pays the expense of maintaining the roads in the park, or for that matter, any other park maintenance." CP at 453. Thus, at the outset, the parties' mutual intent regarding who pays for maintenance or "basic repairs" was unclear. Next, the trial court found that "[t]he advertising materials used to attract tenants to the park stated that the homeowner did not have to pay for '[m]aintenance of streets' and other items, and pointed out that such a provision was a benefit of long-term lot leases." CP at 453 (alterations in original). This finding shows that the parties did not expect the tenants to

9

pay for maintenance or basic repairs based on Azalea's advertising that likely drew the tenants to the community.

Additionally, the trial court found that "[Azalea] drafted the lease. There were no negotiations regarding the language of the lease, there was no real intent expressed by [the Tenants] except the reasonableness of the rental amount and it was attractive that rate increases would be tied to the Consumer Price Index (CPI)." CP at 456. This conclusion of law is actually a finding of fact that we consider a verity here. *Casterline*, 168 Wn. App. at 383; *Scott's Excavating*, 176 Wn. App. at 342. Azalea told the Tenants that the "roads were in good condition and that no extensive repairs were needed, but 'caring for the roads during their lifespan is a capital expenditure,'" while the Tenants questioned whether this work was maintenance or a capital expenditure. CP at 454.

These findings show that the parties' mutual intent was not clear from their lease, and they could not agree whether sealing the road was a "capital improvement." These findings thus support the statement in conclusion of law 14 that the term "capital improvement" "is ambiguous, in that it is sometimes difficult to determine whether an expenditure is for a 'capital improvement' or not." CP at 458. In light of this ambiguity, the court properly construed the term against Azalea, the contract drafter. *Rouse*, 101 Wn.2d at 135. Thus, these findings support the trial court's conclusion that a "'capital improvement' as used in the leases refers to a new capital improvement, and not the replacement or repair of an existing capital improvement." CP at 458. We caution, however, that this conclusion should not be read in isolation but, as discussed below, must be read in context of the entirety of the trial court's conclusions.

10

### D.  CONCLUSION OF LAW 14 MUST BE READ CONSISTENTLY WITH THE OTHER CONCLUSIONS OF LAW

Next, Azalea argues that the "trial court's various findings are inconsistent with each other."  Br. of Appellant at 15.  But Azalea does not challenge any specific findings or directly challenge any conclusions other than conclusion of law 14.  Instead it argues that the trial court erred because conclusion of law 14 is inconsistent with conclusions of law 9, 10, and 13 because conclusion of law 14 applies the term "capital improvement" only to *construction* of new capital assets.  But the "*construction* of new capital assets" language does not appear in any of the conclusions of law and, contrary to Azalea's arguments, conclusions of law 9, 10, and 13 can be read consistently with conclusion of law 14.

Conclusions of law 9, 10, and 13 were not challenged by Azalea and, thus, are the law of the case.  *Nguyen*, 179 Wn. App. at 163-64.  The plain language of conclusion of law 14 states that the trial court found "capital improvement" should not apply to repairs or maintenance, just to "new capital improvement."  CP at 458.

Conclusion of law 9 states that the term "capital improvement" "as . . . used in the leases refers not to repairs or maintenance, but in the sense or similar to usage in IRS regulations, i.e. to improvements of a capital nature, such as new buildings . . . , or betterments made to increase the value of property."  CP at 457.  As in conclusion of law 14, conclusion of law 9 excludes basic repairs and maintenance from the term, but includes "new buildings . . . or betterments."  CP at 457.  While a "new building" as set out in conclusion of law 9 would certainly seem to implicate new construction, such as putting in a new swimming pool, "new betterment" can mean any new improvement, such as retiling an existing swimming pool that is "made to increase the value of

property." CP at 457. Thus, the definition of capital improvement is defined by conclusion of law 9 as well as conclusion of law 14 that includes, but is not limited to, new buildings.

Similarly, conclusion of law 10 states that "[i]f the expenditure 'keeps' the asset in its ordinary operating condition, the expenditure is considered an expense for maintenance and repair [and if] the expenditure 'puts' the asset into its ordinary operating condition, then the expense is of a capital nature." CP at 457. This language does not conflict with that in conclusion of law 14 either. For example, one could consider applying a new layer of asphalt to a road to be a "new capital improvement" under conclusion of law 14 and harmoniously find it "'puts'" the road into its operating condition under conclusion of law 10. CP at 457-58. Indeed, the trial court refers to the testimony of Azalea's accountant in its finding of fact to indicate that he would classify an overlay of asphalt as a capital improvement. From a plain reading, conclusions of law 9 and 10 both exclude general repairs and maintenance from the definition of capital improvement and both of their definitions are now the law of the case because Azalea did not challenge these conclusions of law on appeal. Conclusion of law 14's "new capital improvement" can plainly be read to mean not just new *construction* as Azalea asserts, but to mean a "new" substantial improvement to an existing asset, such as a new coat of asphalt on an existing road. CP at 458.

Finally, conclusion of law 13 states, "A capital improvement mandated by a government agency, however, need not relate to a new capital improvement." CP at 458. Azalea asserts conclusion of law 13 "compound[ed] the error" of the trial court's conclusion of law, while the Tenants state conclusion of law 13 seems "fair" because Tenants should pay for improvements the government mandates Azalea to spend money on. Br. of Appellant at 15; Br. of Resp't at 40. This conclusion of law also does not conflict with conclusion of law 14. The language in conclusion

of law 13 can be understood to mean that even if a government-mandated improvement would not be considered an improvement that increases the value of the property under conclusion of law 9, one that "'puts'" the asset into operating condition under conclusion of law 10 or appears to be a "new capital improvement," like a new layer of asphalt under conclusion of law 14, it can still be considered a capital improvement. CP at 457-58. These conclusions of law do not conflict as Azalea asserts.

We hold that the trial court did not err in entering conclusion of law 14 because it was not beyond the scope of the case, it is properly supported by the trial court's uncontested findings, and it does not conflict with the other conclusions of law which are the law of the case.

## II. TRIAL COURT ATTORNEY FEES

Azalea contends that the trial court erred on two grounds by awarding trial court attorney fees to the Tenants: inadequate review and findings and Tenants are not the sole prevailing party. We disagree.

### A. STANDARD OF REVIEW

We review an attorney fee award for abuse of discretion. *Chuong Van Pham v. City of Seattle*, 159 Wn.2d 527, 538, 151 P.3d 976 (2007). Discretion is abused when the trial court exercises its discretion on untenable grounds or for untenable reasons. *Chuong Van Pham*, 159 Wn.2d at 538.

### B. ADEQUATE REVIEW AND FINDINGS

When evaluating attorney fee awards, the trial court must show how the court resolved disputed issues of fact and the conclusions must explain the court's analysis. *Berryman v. Metcalf*, 177 Wn. App. 644, 658, 312 P.3d 745 (2013), *review denied*, 179 Wn.2d 1026 (2014). Discussion

of hourly rates must also take into consideration the nature of the billing firm and the nature of the work done. *See West v. Port of Olympia*, 146 Wn. App. 108, 122-23, 192 P.3d 926 (2008).

Time spent on unsuccessful efforts in connection with other successful claims must be excluded. *See Chuong Van Pham*, 159 Wn.2d at 539-40. The trial court must "undertake the task" of segregating successful and unsuccessful theories even where the party seeking recovery claims that they were intertwined. *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 344-45, 54 P.3d 665 (2002).

The court must support an award of attorney fees with specific findings of fact and conclusions of law addressing challenged time entries. *Mayer v. City of Seattle*, 102 Wn. App. 66, 82-83, 10 P.3d 408 (2000). And in the absence of a written finding on a particular issue in a judgment, an appellate court may look to the oral opinion of the trial court. *City of Lakewood v. Pierce County*, 144 Wn.2d 118, 127, 30 P.3d 446 (2001).

Here, Azalea relies on *Berryman* for the proposition that attorney fee awards must be rejected when the trial court simply "filled in the blanks" in the prevailing party's proposed order without examining the request or the opposing party's objections on the record. Br. of Appellant at 21; 177 Wn. App. at 658 (holding that there was "no indication that the trial judge actively and independently confronted the question of what was a reasonable fee"). *Berryman* is distinguishable.

First, the trial court here examined Tenants' counsel's motion, declaration, and billing records and, thus, was not passive in evaluating the award. Second, the findings and conclusions properly support the attorney fee award as required under *Mayer*. 102 Wn. App. at 82-83. The trial court found that each Tenant won a judgment for the cost of seal coating the park roads and

that the parties' leases provide for attorney fees to the prevailing party in litigation. These findings support the trial court's conclusions that the Tenants were entitled to the attorney fee award.

And, unlike in *Berryman*, the trial court's conclusions memorialize how the court resolved some of the disputed issues. These conclusions specifically state that (1) the Tenants were the prevailing parties entitling them to attorney fees, (2) the Tenants' attorney reasonably spent 106.95 hours on the case, (3) the attorney's hourly rate of $350 "is reasonable for his expertise, his level of experience and the quality of his work," (4) the lodestar fee awarded is $37,432.50, (5) the lodestar fee is a "reasonable fee in light of the result obtained, the factors listed in RPC 1.5(a) and the totality of the circumstances," and (6) plaintiff's costs of $552.30 are reasonable. CP at 498.

Third, the trial court reviewed Azalea's objections and the Tenants' responses and then made oral findings regarding the objections, including findings that were not memorialized in the written record. Specifically, the trial court (1) reviewed and rejected the Tenants' request for a 1.25 multiplier, (2) considered whether the Tenants had properly segregated out the cost of an unsuccessful CPA claim and found it was not unreasonably included, (3) found the tax law research done by Tenants was contested at trial and not unreasonably included, (4) considered and denied the fees for time spent driving, and (5) adjusted the award to deduct a filing fee and one service fee that Azalea requested. While the trial court did not enter written findings regarding its consideration of each of these issues, we may properly consider the oral record to review the fee award. *City of Lakewood*, 144 Wn.2d at 127. We hold that these oral findings and conclusions regarding Azalea's objections that were not included in the written record satisfy *Mayer*. 102 Wn. App. at 82-83.

We conclude that the trial court actively and adequately reviewed the attorney fee request and Azalea's objections thereto. Additionally, the trial court's written and oral findings provide adequate support for the attorney fees award.

### C. Tenants Solely Prevailed at Trial

Azalea next argues that the trial court abused its discretion when it awarded attorney fees to the Tenants because each party prevailed at trial and each party should bear their own costs. Again we disagree.

RCW 4.84.330 provides that the prevailing party in a contract action is entitled to attorney fees where the contract authorizes such an award. The statute defines "prevailing party" as one in whose favor final judgment is rendered. RCW 4.84.330. Paragraph 27 of the parties' leases provides that the prevailing party "[i]n any action arising out of this Rental Agreement, including eviction" shall be entitled to reasonable attorney fees and costs. CP at 329. If both parties prevail on major issues, each party bears its own costs and fees. *Seashore Villa Ass'n v. Hugglund Family Ltd. P'ship*, 163 Wn. App. 531, 547, 260 P.3d 906 (2011). Finally, RCW 59.20.110 states that in any action arising out of the Manufactured/Mobile Home Landlord-Tenant Act (MHLTA), ch. 59.20 RCW, "the prevailing party shall be entitled to reasonable attorney's fees and costs."[3]

Azalea contends that both parties prevailed on major issues such that each should bear their own costs because it prevailed on receiving the declaratory judgment within its counterclaim which

---

[3] At trial and on appeal, the Tenants argue that Azalea was required to seal coat the roads without charge to them under the MHLTA, which requires mobile home park landlords to "[m]aintain the common premises." RCW 59.20.130(2). Under RCW 59.20.130(9), the park owner also has the duty to specifically "[m]aintain roads within the mobile home park in good condition."

asked for the meaning of "capital improvement" to be defined.[4] Azalea's argument is belied by the record. The trial court dismissed all of Azalea's declaratory judgment counterclaims with prejudice. And the trial court's definition of "capital improvement" resulted from the parties' dispute of the term at trial.[5]

Contrary to Azalea's assertions, the trial court found Azalea had a duty under the MHLTA (RCW 59.20.130(1)) to maintain the roads, held that the parties' lease provision was ambiguous, reimbursed the Tenants for the amount billed for the seal coating, and construed the ambiguous lease provision against Azalea as the drafter of the document. Because the parties' leases contain a prevailing party attorney fee provision and the Tenants were the sole prevailing party under this provision and the MHLTA provision, the trial court did not abuse its discretion in awarding Tenants their attorney fees and costs.

IV. ATTORNEY FEES ON APPEAL

Finally, the Tenants request attorney fees on appeal.

As discussed, the parties' lease provides for attorney fees to the prevailing party. RCW 4.84.330 provides that the prevailing party in a contract action is entitled to attorney fees where the contract authorizes such an award, and RCW 59.20.110 provides a prevailing party in any action arising out of the MHLTA shall also be entitled to attorney fees. Where a statute authorizes fees to the prevailing party, they are available on appeal as well as in the trial court. *Eagle Point Condo. Owners Ass'n v. Coy*, 102 Wn. App. 697, 716, 9 P.3d 898 (2000).

---

[4] This argument appears contrary to Azeala's argument that the trial court exceeded its scope in defining this term.

[5] Azalea does not appeal the dismissal of its declaratory judgment claims.

Under RAP 18.1, if applicable law grants a party the right to recover attorney fees on appeal, the party must devote a section of its opening brief to the request for the fees or expenses. Here, the Tenants complied with RAP 18.1(b) and because we affirm the trial court's finding that the Tenants were the prevailing party, the Tenants are the prevailing party on appeal. *Eagle Point*, 102 Wn. App. at 716. Thus, we award Tenants their attorney fees on appeal.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

WORSWICK, J.

MAXA, J.