[No. 54741-1-I.   Division One.   March 27, 2006.]

TRANSPAC DEVELOPMENT, INC., *Respondent*, v. YOUNG SUK OH, *Appellant*.

*Gregory E. Gladnick*, for appellant.
*Kenneth H. Davidson*, for respondent.

¶1 BECKER, J. — Young Oh, defendant below, appeals the denial of his request for an award of attorney fees after a

bench trial on a commercial landlord-tenant dispute with Transpac Development, Inc. Because both parties prevailed on distinct and severable claims, it was error to deny a request for prevailing party attorney fees without applying the proportionality approach of *Marassi v. Lau*, 71 Wn. App. 912, 859 P.2d 605 (1993).

## FACTS

¶2 Oh leased two suites of office space in Seoul Plaza, an Edmonds shopping center, from Transpac. The lease ran until 2004. Oh had the right to improve the space and to sublet, subject to Transpac's written consent.

¶3 Oh made substantial improvements during the year 1999. He also sublet one suite, with Transpac's consent. When that subtenant left, Oh sublet the suite to CityCom, a cell phone vendor. He submitted the sublease for written approval by Transpac's president and owner, Dong Kyu Hong. Hong's assistant, Terri France, told Oh she expected the sublease would be approved. Relying on France's statement, Oh simply assumed his sublease was approved, without following up to confirm that it was.

¶4 In fact, though, Hong had not consented. CityCom's sublease imposed a commitment on Transpac to allow no other cell phone vendors in the shopping center. There was no such restriction in the underlying lease between Transpac and Oh.

¶5 In August 2000, Transpac leased other space in Seoul Plaza to a different cell phone vendor. Transpac granted this new tenant exclusive cell phone vending rights in Seoul Plaza. Transpac notified Oh that his subtenant, CityCom, would have to move out.

¶6 A month later, CityCom was still occupying Oh's second suite. Transpac notified Oh that he was in breach of his lease by reason of allowing CityCom to continue its sublease without Transpac's consent. On October 9, France sent Oh a two-day warning notice. CityCom did not leave. On October 12, Transpac notified Oh in writing that his

lease was terminated, the locks would be changed, and he could not have a new lease. At this point, CityCom did finally move out.

¶7 Oh, however, stayed on. For nine months, he paid the same monthly rent as before, and Transpac accepted it. Eventually, Oh found space elsewhere. After giving Transpac one month's written notice, he moved out as of July 31, 2001. In giving notice, he asserted that after the termination of his lease the previous October, he had been renting on a month-to-month basis. Transpac wrote back to Oh, asserting that his lease remained in effect and he was bound to continue to pay rent until the lease ended in 2004. According to Transpac, the October 12 termination notice to Oh had actually been a ruse, mutually agreed upon, to help Oh convince CityCom that its refusal to leave was getting Oh in trouble with the landlord. Oh wrote back, disputing this version of events. He claimed that Transpac had breached the lease when it forced his subtenant out so precipitously and that, if sued, he would counterclaim for his remodeling and moving expenses, loss of subtenant rent, and his security deposit.

¶8 In January 2002, Transpac sued Oh, alleging he owed rent and fees from the time that he left, as well as rent for the remaining term of the lease. Oh answered, denying this claim. As affirmative defenses, he asserted that Transpac had failed to mitigate its damages and that Transpac was barred by estoppel from claiming the lease was still in force when Transpac had led Oh to believe the lease was terminated. He asserted a counterclaim for damages caused by being forced out prematurely. Both parties claimed attorney fees under a bilateral attorney fee provision in the lease.

¶9 The trial court entered factual findings and concluded as follows. Oh's sublease to CityCom was invalid as it did not have Transpac's written consent. Transpac's refusal to consent was reasonable, as the CityCom sublease purported to impose a condition of exclusivity to which Transpac had not agreed. CityCom had at best a month-to-month tenancy, and it was unreasonable for Oh to believe

he had an ongoing right to CityCom's rent. Oh's failure to evict CityCom violated the lease, putting Oh in breach. As a result, Transpac's 2000 termination of Oh's lease was valid. Transpac was estopped from arguing the termination was a sham. After the termination, Oh's tenancy was month-to-month. Oh terminated that tenancy with his timely notice.

¶10 The court further concluded that Transpac was not entitled to damages under the lease both because it had elected to terminate the lease and also because it did not seriously attempt to advertise the space after Oh left and therefore failed to mitigate its damages. Oh was not entitled to damages on his counterclaim because the termination of his lease was his own fault, i.e., due to the problem with his subtenant.

¶11 Neither party disputes these conclusions now. The issue raised by Oh's appeal is whether the trial court erred by denying his request for prevailing party attorney fees. At the end of the trial, the court orally ruled: "In short, I'm not awarding either party any monetary amount. Plaintiff has not prevailed on his claims. Defendant has not prevailed on his counterclaims. There's no clear prevailing party; therefore, I award neither side attorney fees nor costs under the terms of the contract."

¶12 Oh objected, arguing that the defense had prevailed by successfully defending against a claim that was much more substantial, both in amount and time expended in litigation, than his own counterclaim. Counsel for Transpac responded that he "never took these counterclaims lightly," and that they presented a major issue arising out of the same set of facts as Oh's complaint. The court reiterated its ruling:

> Well, prevailing party looks to all the issues. Though the landlord has not received compensation, the termination here was due to the clear unequivocal breach of Mr. Oh. . . .
>
> So while . . . the plaintiff may not have recovered money on its claims, it prevailed on the substantial portion of that claim

in this court, finding that Mr. Oh is the party who breached the contract in this case, which is not the position Mr. Oh took. . . . I think you both did not prevail.

Oh appeals this ruling.

¶13 The lease here provides that in any litigation, the prevailing party is entitled to reasonable attorney fees. Such a provision makes an award of attorney fees to the prevailing party mandatory under RCW 4.84.330. As provided by that statute, a prevailing party is the party in whose favor final judgment is rendered. If neither party wholly prevails, then the party who substantially prevails is the prevailing party, a determination that turns on the extent of the relief afforded the parties. If both parties prevail on major issues, it is appropriate to let each bear their own costs and fees. *Rowe v. Floyd*, 29 Wn. App. 532, 535, 629 P.2d 925 (1981).

¶14 The issue in *Rowe* arose from an attorney fee provision in a contract to purchase orchard land. The buyers failed to make a scheduled payment of $20,000. Citing a clause that required adjustment if frost damage diminished the crop, they offered only $833. The sellers sued for forfeiture. The court dismissed the complaint for forfeiture but calculated the appropriate payment was $16,475, not $833, and gave the buyers four months to pay up. The court refused both parties' requests for prevailing party attorney fees. This ruling was affirmed on appeal. "In the language of the judgment and its practical effect, both parties were favored by the order appealed from." The statutory definition of "prevailing party" applied equally to buyer and seller; "neither or both prevailed." *Rowe*, 29 Wn. App. at 535-36.

¶15 Transpac contends the court's refusal to award attorney fees was correct under *Rowe* because the ruling essentially determined that both Transpac and Oh prevailed on major issues. Each party avoided the remedies the other party sought. When the court found that Oh breached, and his breach justified Transpac's termination of the lease, Transpac avoided liability for approximately

$35,000 on Oh's counterclaims. When the court found that Transpac's letter terminating Oh's lease in response to his breach was not a sham, and that Transpac failed to mitigate damages caused by Oh's breach, Oh avoided liability for Transpac's claim of approximately $150,000 in unpaid rent under the lease.

¶16 Oh contends the trial court erred in failing to apply the proportionality approach adopted in *Marassi*, 71 Wn. App. at 916. In that case, we said that the substantially prevailing standard set forth in *Rowe*, although "appropriate in some cases," is inadequate "where multiple distinct and severable contract claims are at issue. In such a situation, the question of which party has substantially prevailed becomes extremely subjective and difficult to assess." *Marassi*, 71 Wn. App. at 917. Instead, a trial court should take a "proportionality approach" when requested to award prevailing party attorney fees. "A proportionality approach awards the plaintiff attorney fees for the claims it prevails upon, and likewise awards fees to the defendant for the claims it has prevailed upon. The fee awards are then offset." *Marassi*, 71 Wn. App. at 917.

¶17 Initially, we note that Oh did not cite *Marassi* below in arguing for prevailing party status. He did, however, make a *Marassi*-type argument. He contended that the litigation had primarily been devoted to Transpac's claim of unpaid rent. "And I think it's pretty clear to the Court the actual putting forth of the defendant's counterclaims took almost no time. The time was spent—not only discovery but also during the trial, it was all spent trying to prove that there was a valid termination of the lease."[1] We therefore address the issue on the merits. *See Eagle Point Condo. Owners Ass'n v. Coy*, 102 Wn. App. 697, 714 n.1, 9 P.3d 898 (2000).

¶18 Oh points out that Division Three refused to apply *Marassi* in a case involving distinct claims and reverted instead to *Rowe. Hertz v. Riebe*, 86 Wn. App. 102, 106, 936

---

[1] Report of Proceedings (Mar. 29, 2004) at 23.

P.2d 24 (1997) ("Here, each party recovered on a substantial theory and therefore the proportionality approach adopted in *Marassi* does not apply."). This Division has criticized the result in *Hertz* as "contrary to the reasoning" in *Marassi*. *See Int'l Raceway, Inc. v. JDFJ Corp.*, 97 Wn. App. 1, 9, 970 P.2d 343 (1999). Following *Marassi* and *International Raceway, Inc.*, we conclude that when distinct and severable claims are involved, an order that leaves both parties to bear their own costs is not adequately supported by a bare conclusion that each party recovered on a substantial theory. As stated in *Marassi*, the question as to which party substantially prevailed is too subjective and difficult to assess without a more detailed consideration of what actually happened in the litigation.

¶19 Transpac argues that all claims arose out of Oh's signing a sublease to CityCom without the landlord's consent. Therefore, according to Transpac, this was not a case involving "multiple distinct and severable contract claims" and it was not suitable for a proportional fee award under *Marassi*. We disagree. It is not infrequent that one misunderstanding in a business relationship will generate distinct and severable claims. Indeed, that is what happened in *International Raceway, Inc.* When the tenant harvested timber without obtaining the landlord's written permission, the landlord refused to extend the lease. The tenant sued to obtain a lease extension, while the landlord sued for wrongful removal of timber. *Int'l Raceway, Inc.*, 97 Wn. App at 4. Both parties prevailed in part. We found this situation suitable for an application of *Marassi*, even though both claims were sparked by the tenant's harvesting of the timber. *Int'l Raceway, Inc.*, 97 Wn. App. at 7-9. The situation in the present case is analogous, and we reach the same result.

¶20 The proportionality approach in *Marassi* is consistent with the general trend in Washington law toward establishing more specific standards for awarding attorney fees, thus facilitating more meaningful appellate review. *See, e.g., Scott Fetzer Co. v. Weeks*, 122 Wn.2d 141, 148, 859

P.2d 1210 (1993) ("fair play and substantial justice" standard provides insufficient guidance); *Mahler v. Szucs*, 135 Wn.2d 398, 434-35, 957 P.2d 632 (1998) ("Courts must take an *active* role in assessing the reasonableness of fee awards, rather than treating cost decisions as a litigation afterthought," and should not simply accept unquestioningly fee affidavits from counsel); *Eagle Point Condo. Owners*, 102 Wn. App. at 706 (whether a party is a prevailing party for the purposes of an attorney fee award is often reviewed quite closely on appeal). In this case, a trial took place lasting five court days after two years of pretrial litigation. The attorney fees incurred by both parties undoubtedly were quite substantial. The determination of prevailing party status likely was as significant to the parties, in economic terms, as was the resolution of the claims on the merits. And under *Mahler*, that determination should be reflected in proper findings of fact and conclusions of law. *Mahler*, 135 Wn.2d at 435. We remand for reconsideration of Oh's request for attorney fees in light of *Marassi* and for entry of findings of fact and conclusions of law that establish an adequate record for review.

¶21 Transpac contends that *Marassi* should not be interpreted as automatically requiring proportionality to be determined by comparing the amount of damages sought by each party. We agree. *Marassi* calls for the court to determine the amount of attorney fees each party would be entitled to for prevailing against the other's claim, as if there were two separate lawsuits, and then to offset one award against the other.

¶22 In this case, the court should first determine the amount of attorney fees and costs reasonably incurred by Oh in successfully defending against the claim for unpaid rent. The court should next determine the amount of attorney fees and costs reasonably incurred by Transpac in successfully defending against Oh's counterclaim for remodeling expenses and loss of subtenant rent. The two awards should then be offset.

## SECURITY DEPOSIT

¶23 Oh's second assignment of error is to the trial court's decision that he was not entitled to the return of his security deposit. The trial court found that Transpac properly retained the deposit because Oh had failed to return the keys when he moved out and had left the space in need of cleaning. The question is whether substantial evidence existed to support damages of $734.83, which was the amount of the deposit.

■ ■ ¶24 Damages must be supported by competent evidence, but a party who has established the fact of damage will not be denied recovery on the basis that the amount of damage cannot be exactly ascertained. Evidence is sufficient if it affords a reasonable basis for estimating the loss and does not subject the trier of fact to speculation and conjecture. *Eagle Point Condo. Owners*, 102 Wn. App. at 704.

¶25 As to replacing the keys, an invoice from Transpac's usual locksmith was in evidence, detailing charges of $139.00 for an earlier call at Seoul Plaza. This was sufficient evidence upon which to base an estimate of damage attributable to Oh's failure to leave the keys. But as to cost of cleaning the carpets in Oh's offices, there was only Hong's testimony that when the next tenant came in a few years later, he hired Transpac's normal janitorial service, and they had "quite a cleaning." This was insufficient to prove a cleaning cost attributable to Oh. We reverse in part the ruling denying Oh's counterclaim for the security deposit, and direct that Oh be given judgment for the amount of the deposit less $139.00 for the locksmith.

■ ¶26 Oh, as the prevailing party in this court, is entitled to an award of attorney fees for this appeal, subject to compliance with RAP 18.1.

¶27 Reversed in part; remanded for rehearing on the issue of attorney fees.

BAKER and SCHINDLER, JJ., concur.

Reconsideration denied May 24, 2006.