# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| GADDIS EVENTS, INC., | ) | No. 75227-8-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| SHAUNA WU, | ) | UNPUBLISHED |
| | ) | |
| Respondent. | ) | FILED: <u>May 30, 2017</u> |
| | ) | |

Cox, J. — Gaddis Events, Inc. appeals the trial court's denial of a preliminary injunction and summary judgment dismissal of its request for a permanent injunction. It also challenges the award of attorney fees to Shauna Wu.

We hold that the trial court did not abuse its discretion in denying the preliminary injunction. There were no genuine issues of material fact and Wu was entitled to judgment as a matter of law. And the trial court properly awarded attorney fees to Wu. We affirm. We also deny, as moot, Wu's Motion for Partial Dismissal dated April 4, 2017. And we deny Gaddis's request to reschedule oral arguments.

Shauna Wu previously worked for Gaddis Events (Gaddis), a corporate event service provider. Her prior experience was in planning social events. Upon hiring, she signed a noncompete agreement that precluded her from working in the corporate events business for two years either within 100 miles of Seattle or for any of Gaddis's clients. While employed at Gaddis, Wu provided client services to the Microsoft U.S. Devices Team ("MSUS Devices Team").

Wu eventually resigned from Gaddis. She went to work for the Seattle office of Wunderman Chicago (Wunderman), an international marketing firm. There, she was assigned to a roadshow for the MSUS Devices Team.

When Gaddis learned of this, it demanded that Wu stop working on the roadshow. Wu refused and Gaddis sued for breach of contract, violation of trade secrets and confidential information, and tortious interference with an economic relationship. It requested an injunction to enforce the noncompete agreement.

Gaddis successfully moved for a TRO enjoining Wu from working for Gaddis's clients. The trial court later heard arguments on whether to issue a preliminary injunction and declined to do so.

Wu then answered the original complaint and counterclaimed for a wrongful TRO and for unpaid vacation benefits. She also moved for summary judgment on Gaddis's claims and injunction request. She voluntarily dismissed her counterclaims. The trial court granted summary judgment on the claims for breach of contract, violation of trade secrets and confidential information, and tortious interference. It also denied the request for a permanent injunction.

Wu then sought an award of reasonable attorney fees. In documenting hours worked, her counsel subtracted redundant or unrelated hours. The trial court awarded fees and costs.

Gaddis appeals.

## PRELIMINARY INJUNCTION

Gaddis argues that the trial court abused its discretion in declining to issue a preliminary injunction. We disagree.

To obtain a preliminary injunction, a party must show (1) a clear legal or equitable right; (2) a well-grounded fear of immediate invasion of that right and (3) that the facts complained of either are resulting in or will result in actual and substantial injury.[1] The supreme court has said that "[i]f a party seeking a preliminary injunction fails to establish any one of these requirements, the requested relief must be denied."[2]

We review for abuse of discretion the trial court's denial of a preliminary injunction.[3] A court abuses its discretion when it makes a decision for untenable reasons or on untenable grounds.[4]

---

[1] Rabon v. City of Seattle, 135 Wn.2d 278, 284, 957 P.2d 621 (1998).

[2] Kucera v. State, Dep't of Transp., 140 Wn.2d 200, 210, 995 P.2d 63 (2000).

[3] Id. at 209.

[4] Wade's Eastside Gun Shop, Inc. v. Dep't of Labor and Indus., 185 Wn.2d 270, 277, 372 P.3d 97 (2016).

Under the first prong, an employer has a clear legal or equitable right to protect its trade secrets, confidential information, and client relationships.[5]

Here, Gaddis brought this action to protect its client relationship with the MSUS Devices Team. Thus, it meets this element.

Regarding the second prong, the employer must show a well-grounded fear of invasion of right.

Here, Gaddis cannot show a sufficient fear of invasion. Wunderman secured the roadshow contract prior to employing Wu. And Gaddis did not bid on that contract. Thus, Gaddis cannot show Wu's involvement in performing on that contract threatened its own client relationship.

In its reply brief, Gaddis contends it can show such an invasion simply because Wu allegedly violated the noncompete agreement. But its relevant legal or equitable right lies in the protection of its client base, not in seeing Wu adhere to the noncompete agreement.

Regarding the third prong, the party seeking a preliminary injunction must show that facts complained of have or will result in actual or substantial harm.

Here, there is no dispute that Gaddis fails to meet the third prong of the governing test. Gaddis provides no facts to show it has suffered actual and substantial harm. Rather, it cites to Emerick v. Cardiac Study Center, Inc., P.S.[6] for the proposition that the injury shown need only be potential, not actual. But

---

[5] See Nowogroski Ins. v. Rucker, 137 Wn.2d 427, 441, 971 P.2d 936 (1999); Emerick v. Cardiac Study Center, Inc., P.S., 189 Wn. App. 711, 722, 357 P.3d 696 (2015), review denied, 185 Wn.2d 1004 (2016).

[6] 189 Wn. App. 711, 357 P.3d 696 (2015).

that case concerned the enforceability of a noncompete agreement, not a preliminary injunction determination.[7] Thus, the trial court appropriately characterized Gaddis's claim of harm as "speculative."

Accordingly, the trial court did not abuse its discretion in denying Gaddis's motion for a preliminary injunction.

Gaddis argues that the trial court applied the wrong standard in denying its motion for a preliminary injunction and should have applied the standard applicable to determining the enforceability of a noncompete agreement. This argument is contrary to well-established law that we just discussed.

In Gaddis's opening brief, it argues simply that the proper analysis is whether the noncompete agreement was validly formed and reasonable. While this analysis goes to the merits of such an agreement's enforceability, it does not control the trial court's determination at the preliminary injunction stage. For this reason and because Gaddis provides no authority holding that the standard is other than that described in Rabon and other cases, we reject this argument.

## SUMMARY JUDGMENT

Gaddis argues that the trial court improperly granted summary judgment against its prayer for an injunction. We disagree.

Summary judgment is proper "only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

---

[7] Id.

law."[8] "A genuine issue of material fact exists if 'reasonable minds could differ on the facts controlling the outcome of the litigation.'"[9] We consider "the evidence and all reasonable inferences from [such] evidence in the light most favorable to the nonmoving party."[10]

Noncompete agreements are enforceable in Washington if they are validly formed and reasonable.[11] Courts employ a three pronged test to determine whether such an agreement is reasonable. The courts asks:

> (1) whether the restraint is necessary to protect the employer's business or goodwill, (2) whether it imposes on the employee any greater restraint than is reasonably necessary to secure the employer's business or goodwill, and (3) whether enforcing the covenant would injure the public through loss of the employee's service and skill to the extent that the court should not enforce the covenant.[12]

We review de novo a trial court's grant of summary judgment.[13]

The parties' argument concerns only the first two prongs of the test quoted above. Regarding the first prong, an employer's interest in protecting its

---

[8] Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014); see also CR 56(c).

[9] Knight v. Dep't of Labor & Indus., 181 Wn. App. 788, 795, 321 P.3d 1275 (2014) (quoting Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)).

[10] Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

[11] Labriola v. Pollard Group, Inc., 152 Wn.2d 828, 833, 100 P.3d 791 (2004).

[12] Emerick, 189 Wn. App. at 721-22.

[13] Id. at 720.

business must be legitimate.[14] And the employer has legitimate interests in protecting its client relationships "and in prohibiting the employee from taking its clients."[15] It also has legitimate interests in protecting its trade secrets and confidential information.[16] But it does not have a legitimate interest in "prevent[ing] the competitive use of the unique personal qualities of the employee."[17] At this step of analysis, the employer need only "demonstrate a protectable interest exists and that [the employee] could pose a threat to that interest if not adequately restrained . . . . It does not have to prove actual competition or damages."[18]

Copier Specialists, Inc. v. Gillen[19] is instructive. In that case, Copier Specialists hired Jason Gillen to repair photocopiers.[20] It required that he sign a noncompete agreement.[21] But it soon fired him for inadequate performance in training.[22]

---

[14] Id. at 722.

[15] Id.

[16] Nowogroski Ins., 137 Wn.2d at 441.

[17] Emerick, 189 Wn. App. at 721.

[18] Id. at 723.

[19] 76 Wn. App. 771, 887 P.2d 919 (1995).

[20] Id. at 772.

[21] Id. at 773.

[22] Id.

He found new employment with another photocopier repair company.[23] His new position involved no sales activity.[24]

Copier Specialists brought an action to enforce the noncompete agreement, but the trial court declined to do so.[25] Division Three of this court affirmed, holding that such a restraint was not "necessary to protect a business from the advantage a former short-time employee may have by reason of the skills and training acquired during his or her employment."[26] It cited the "general rule in most jurisdictions [] that skills acquired by an employee during his or her employment do not warrant enforcement of a covenant not to compete."[27]

Here, Gaddis cannot show a protectable and legitimate interest. Wu had no access after leaving Gaddis to Gaddis's trade secrets or confidential information. Gaddis's only allegation otherwise indicates, in working on corporate events for Microsoft, Wu had received appropriate training and experience. Gaddis indicates that were it not for this training and experience, Wunderman would not have assigned Wu to the MSUS Devices Team project. Even were this true, skills acquired during employment do not warrant

---

[23] Id.

[24] Id.

[25] Id.

[26] Id. at 774.

[27] Id.

enforcement of a noncompete agreement.[28] Gaddis also fails to allege facts suggesting Wu could imperil its goodwill.

Thus, the only issue is whether Gaddis had a legitimate interest in its client base that Wu threatened. But Wunderman had obtained the roadshow contract before Wu began working there. And Gaddis had not bid on it. Thus, Wu did not exploit her knowledge of Gaddis's client base. Even if she had wanted to, she was not in a position to do so, as her work did not involve sales or building business.

In sum, Gaddis fails to show any genuine issue of material fact. There is no showing of a legitimate interest in barring Wu from providing services to a client whom she did not select and regarding whom she does not herself compete with Gaddis. Wu was entitled to judgment as a matter of law.

The second prong asks whether the scope of the restraint is reasonably necessary to protect the employer's legitimate interests. The noncompete agreement in this case has two alternative scopes. It applies to services provided to either any person within 100 miles of Seattle or Gaddis's clients without geographic limitation. Because the parties dispute whether enforcement is reasonable at all, they do not contest the 100 mile geographic perimeter restriction. Thus, they focus on whether the restraint on work performed for any client of Gaddis anywhere is reasonable.

---

[28] Id.

Perry v. Moran[29] is helpful in considering this prong when the relevant interest is the employer's client base. In that case, an accounting firm had required Judith Moran, a senior accountant, to sign a noncompete agreement barring her from servicing the firm's clients for five years after her departure from the firm.[30]

Moran eventually left with several other senior accountants.[31] They joined together in a combined practice performing services similar to those they had at the firm.[32] The new practice mailed notices of its formation to individuals and companies that might offer client referrals.[33] It did not directly contact the firm's clients.[34] But the referrals brought in business from the firm's clients.[35]

The firm sued, seeking to enforce the noncompete agreement.[36] The trial court dismissed the enforcement action, concluding that Moran had not solicited clients from the firm.[37]

---

[29] 109 Wn.2d 691, 748 P.2d 224 (1987).

[30] Id. at 692-93.

[31] Id. at 693.

[32] Id.

[33] Id.

[34] Id.

[35] Id.

[36] Id.

[37] Id. at 693-95.

But the supreme court reversed, explaining that the noncompete agreement applied regardless of solicitation and barred the provision of services to firm clients.[38] It collected similar cases:

> support[ing] the prohibition against the **performance of services** so that an employer can protect its client base without the necessity of proving the solicitation or diversion of clients (an evidentiary morass at best) but need only prove that the client of the employee had been the client of the former employer.[39]

Moran had left with numerous firm employees and ended up with a number of the firm's clients.[40] Such conduct and its result were sufficient to justify enforcement of the noncompete agreement.[41]

Here, unlike in Perry, the MSUS Devices Team did not become Wu's client. Rather, as stated, Wunderman secured the relevant contract before hiring Wu. She, in the words of the noncompete agreement, may have "assist[ed] others to engage in . . . providing event planning . . . for corporations." This work did not involve "sales, pitching, or business development" but rather concerned "logistics (e.g., vendors, food, entertainment, and the like)."

But Perry does not permit an employer to legally restrain its employees from assisting future employers in servicing clients when the employee has no clients of their own. Thus, enforcement of the noncompete agreement was not necessary to protect Gaddis's client base. Any threat to that client base would

---

[38] Id. at 696.

[39] Id.

[40] Id.

[41] Id.

11

have to come from Wunderman, not Wu. Accordingly, there is no genuine issue of material fact whether enforcement of the noncompete agreement would impose upon Wu more than reasonably necessary. It would bar conduct that does not actually threaten Gaddis's protectable interest. Wu was entitled to judgment as a matter of law.

Gaddis argues that the trial court failed to apply the summary judgment standard by finding certain facts in accordance with Wu's allegations. This is unpersuasive.

Findings of fact in connection with a ruling on summary judgment are "not proper, are superfluous, and are not considered by the appellate court."[42] Accordingly, we have not considered anything that may be properly characterized as findings in connection with this ruling.

Gaddis argues that the trial court improperly granted summary judgment in Wu's favor on its request for a permanent injunction to enforce the noncompete agreement because Wu allegedly never moved for summary judgment on this ground. This argument lacks merit.

Gaddis's reasoning is unclear. It contends that the trial court erred in not addressing Wu's arguments as to proximate causation and by applying the test for enforceability of the noncompete agreement. It cites no authority explaining how this is erroneous.[43] Rather, Wu argued that the trial court should grant

---

[42] Hemenway v. Miller, 116 Wn.2d 725, 731, 807 P.2d 863 (1991).

[43] See Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 248, 350 P.3d 647 (2015); RAP 10.3(a)(6).

summary judgment on Gaddis's injunctive claim for enforcement of the noncompete agreement. And the trial court so granted that summary judgment. Thus, the trial court did not err in this regard.

## ATTORNEY FEES

### Prevailing Party

Gaddis argues that the trial court erred in awarding Wu attorney fees because she was not the prevailing party. We hold that she did prevail.

Under Washington law, a court may award attorney fees when authorized by contract, statute, or recognized ground in equity.[44] When a contractual provision provides for fees to the prevailing party, RCW 4.84.330 makes the award mandatory.[45]

We review de novo whether a statute entitles a party to fees.[46]

The issue is what makes a litigant a prevailing party. There are two possible relevant definitions, under the contract and under RCW 4.84.330.

The first definition follows the plain language of the contractual provision. We have previously concluded that neither RCW 4.84.330 nor any other "compelling legal reason" supports "adopting the statutory definition of 'prevailing party' . . . in interpreting the [contract] provision."[47] Rather, under the "common

---

[44] Berryman v. Metcalf, 177 Wn. App. 644, 656, 312 P.3d 745 (2013).

[45] Transpac Dev., Inc. v. Oh, 132 Wn. App. 212, 217, 130 P.3d 892 (2006).

[46] Kaintz v. PLG, Inc., 147 Wn. App. 782, 785-86, 197 P.3d 710 (2008).

[47] Walji v. Candyco, Inc., 57 Wn. App. 284, 288, 787 P.2d 946 (1990).

13

sense meaning of the word," a party can prevail when her opponent voluntarily dismisses a matter.[48] We characterized this as the general rule.[49]

The second definition follows RCW 4.84.330. That statute defines the prevailing party as the "party in whose favor final judgment is rendered."[50] As interpreted by the supreme court, a voluntary dismissal is not a "final judgment" under this particular statute because it does not resolve the substantive issues of the case or settle the rights of the parties.[51] In reaching that conclusion, the court rejected usage of the general rule in applying RCW 4.84.330.[52] It did not clarify whether that rejection embraced application of the rule when analyzing contractual fee provisions without regard to RCW 4.84.330.

Here, the award of fees rested on a contractual provision, stating: "The prevailing party shall be entitled to reasonable attorneys' fees and costs incurred in connection with any such litigation arising under or related to this Agreement." This provision does not define prevailing party.

Under the strictly contractual approach, we may consider Wu's voluntary dismissal of her counterclaims. Thus, Wu did not prevail on all issues.

---

[48] Id.

[49] Id.

[50] RCW 4.84.330.

[51] Wachovia SBA Lending, Inc. v. Kraft, 165 Wn.2d 481, 492, 200 P.3d 683 (2009).

[52] Id. at 490.

Accordingly, we must determine the extent to which each party prevailed on the major issues in this litigation.

Her voluntary dismissal was not a major issue on which Gaddis prevailed. The record does not suggest the parties engaged in any meaningful discovery or motions practice on it. And, as counterclaims, they did not dispose of the merits in this suit.

By contrast, Wu prevailed in securing summary judgment against all of Gaddis's substantive claims as well as its request for an injunction. Even if the voluntary dismissals are considered, Wu substantially prevailed and is entitled to fees.

*Fee Amount*

Gaddis also argues that, if fees were properly awarded Wu, the trial court abused its discretion in calculating the amount of fees. We disagree.

While calculation of an attorney fee award rests in the trial court's discretion, the fee must be reasonable.[53] Courts must actively assess that reasonableness and "not simply accept unquestioningly fee affidavits from counsel."[54] Thus, the trial court must enter findings and conclusions that are not conclusory.[55] It must "actively and independently confront[]" fee affidavits and objections thereto.[56] It must thus screen out redundant entries, "'wasted efforts,

---

[53] Berryman, 177 Wn. App. at 657.

[54] Id.

[55] Id. at 658.

[56] Id.

duplicative efforts, unidentifiable costs, and inconsistent or vaguely worded time entries."[57] Overstaffing a litigation task is duplicative.[58] To enable the court to assess the fee's reasonableness, a litigant may provide "a simple table that lists, for each attorney, the hours reasonably performed for particular tasks and the rate charged."[59]

Here, Wu's counsel provided just such a list. It extensively outlines the time her attorneys worked on this case. It provides the date, attorney name, time duration, fee amount, and a detailed narrative of the particular entry. It does not appear to include any redundant or duplicative entries. Nor has Gaddis pointed to any. The trial court thus reviewed an extensive and detailed fee affidavit.

Based on that filing, the trial court reasonably adopted Wu's counsels' assertion that they had "gone through and excluded time related to (a) claims *not* subject to fee shifting, such as [Wu's] dismissed counterclaims, (b) time that was not productive, at least in retrospect, and (c) time that was duplicative, at least in retrospect." Based on the affidavit, the trial court did not abuse its discretion in calculating fees initially at $53,345.50.

Gaddis does not contest the award of costs. But Gaddis argues the fee was improper because Wu did not file a record of that excluded time. This argument lacks merit.

---

[57] Id. at 659 (quoting Mayer v. City of Seattle, 102 Wn. App. 66, 82-83, 10 P.3d 408 (2000)).

[58] Id. at 662.

[59] Id. at 664.

Gaddis cites no authority requiring that a party seeking attorney fees submit proof of excluded time.[60] Rather, the law requires that the court actively and independently assess the request for fees. The focus is thus on what was filed, rather than on what was not. The trial court exercised its independent judgment in this case based on an extensive and detailed fee affidavit. It did not abuse its discretion in doing so.

Gaddis also appears to challenge the trial court's application of a 25 percent multiplier to the base fee amount noted above. But it provides no argument to this effect and the court need not entertain this contention.[61] Thus, the trial court did not abuse its discretion in multiplying $53,345.50 by 1.25, resulting in a total fee award of $66,681.

### Fees on Appeal

Wu requests appellate fees pursuant to RAP 18.1. She is entitled to an award of fees, subject to compliance with RAP 18.1(d).

RAP 18.1(a) allows a party entitled by "applicable law" to request fees and costs of appeal. The court considers whether to issue such an award based on that applicable law.[62]

Here, the same contract providing for an award below justifies an award in this court. Thus, Wu is entitled to an award of fees, subject to her compliance with RAP 18.1(d).

---

[60] See Darkenwald, 183 Wn.2d at 248; RAP 10.3(a)(6).

[61] Id.

[62] Thompson v. Lennox, 151 Wn. App. 479, 491, 212 P.3d 597 (2009).

17

## MOTION TO DISMISS

After initial briefing, Wu moved to partially dismiss Gaddis's appeal regarding the request for injunctive relief. We deny this motion as it is rendered moot by our decision.

We generally do not decide moot issues.[63] An issue is moot if we "can no longer provide effective relief."[64]

Here, we have decided the substantive case under appeal. And we have rejected Gaddis's appeal which Wu moves to dismiss. Thus resolved, the issue of partial dismissal is moot.

We affirm the denial of the preliminary injunction, the grant of partial summary judgment, and the award of attorney fees. We also award Wu attorney fees on appeal, subject to compliance with RAP 18.1(d).

_Cox, J._

WE CONCUR:

_____

_____

---

[63] SEIU Healthcare 775NW v. Gregoire, 168 Wn.2d 593, 602, 229 P.3d 774 (2010).

[64] Id.

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2017 MAY 30 AM 9: 18