IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ARON ENGLISH,<br><br>                  Appellant,<br><br>       v.<br><br>CHARCOAL CREEK LLC, CALVIN WHITE,<br><br>                  Respondents,<br><br><br>ERIC BLAKEMORE, INC. dba FREDERICKS APPLIANCE CENTER,<br><br>                  Defendant. | No. 85107-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Aron English purchased a home from developer Charcoal Creek LLC. Charcoal Creek cut down trees on the property after the parties entered into a purchase and sale agreement (PSA) but before the closing on the home. English sued for breach of the PSA, and Charcoal Creek counterclaimed for waste because English removed irrigation and landscaping materials on a neighboring property owned by Charcoal Creek. After a bench trial in which English prevailed on the breach of the PSA and Charcoal Creek prevailed on its waste claim, the trial court denied the parties' requests for attorney fees and costs on the grounds that both had prevailed on major issues related to the

contract and even if English could recover fees on the breach claim alone, the record did not allow for segregation of attorney fees.

English appeals solely the ruling on fees and costs. We conclude that the trial court erred by finding that English was not a prevailing party and by denying fees to both parties. English prevailed on the only claim based on the PSA and is therefore entitled to reasonable fees and costs based on the contract. Charcoal Creek prevailed on the waste claim and is entitled to statutory fees. Therefore, we reverse and remand for the trial court to determine the fee awards for each party.

FACTS

Charcoal Creek LLC[1] built eight high-end homes in a small development named The Orchard located in West Seattle. Aron English and Charcoal Creek executed a purchase and sale agreement (PSA) for the purchase of one of the properties on January 11, 2021. After entering into the PSA, Charcoal Creek hired Haskins Tree Care LLC to cut down trees in the development, including nine trees on English's property. The sale of the property closed on February 16, 2021, and English took possession.

In late August or early September 2021, Charcoal Creek landscaped the hillside of a parcel of land adjacent to English's property. English removed the plants and irrigation line, depositing the materials on the patio of the neighboring

---

[1] The managing member of Charcoal Creek, Calvin White, is also a named defendant.

house. Charcoal Creek attempted to resolve the issue with English and recoup its losses, but English referred all communication to his lawyer.

The following month, English filed a lawsuit against Charcoal Creek alleging timber trespass, waste, breach of contract, negligent or intentional misrepresentation, and unjust enrichment, all related to removal of the trees on his property. Charcoal Creek counterclaimed for trespass and waste for English's removal of the landscaping and irrigation materials from the neighboring property.

The parties engaged in settlement discussions. English claimed the value of the removed trees was $71,900, which with treble damages under the timber trespass statute amounted to $215,700. He also alleged that Charcoal Creek realized $356,500 in increased value to its properties by removing the trees and demanded this value as damages for the unjust enrichment claim. Altogether, English sought to recover damages totaling $572,200, excluding attorney fees and costs. The parties failed to reach a settlement agreement.

Charcoal Creek moved for partial summary judgment on English's claims for unjust enrichment, timber trespass, and waste, and also sought a finding of liability for treble damages on its waste claim against English. The trial court granted summary judgment only on the claim for unjust enrichment, which it dismissed with prejudice.

The parties proceeded to a bench trial. English abandoned all claims except for timber trespass for one of the trees and breach of contract for the

3

removal of the others. As for damages, English claimed that for breach of the PSA, "diminution in the property value is the appropriate award for damages measured by the difference between the contract price and the fair market value of the price immediately after the breach." According to English, removal of the trees diminished his property value by $245,000. Charcoal Creek argued for replacement cost of the trees as the proper measure of damages.

The parties stipulated to certain facts, which the court incorporated into its findings of fact. After considering the arguments and the evidence presented at trial, the court determined that no timber trespass occurred because Charcoal Creek had removed the trees before English owned the property. As for the breach of contract claim, the court held that removal of the trees was a breach of the PSA and English was entitled to replacement value of the trees in the amount of $47,000. The court found the expert appraiser's testimony about diminished market value was not credible, reliable or persuasive, and that removal of the trees did not diminish the market value of the property. The court concluded that English did not prove damages or harm from the breach of the PSA beyond the $47,000 replacement value of the trees.

As to Charcoal Creek's waste claim, the court concluded that English "went onto Charcoal Creek's land and wrongfully caused waste or injury to the land or wrongfully injured personal property or improvements to real estate on the land," but Charcoal Creek did not prove damages or harm due to the waste. After a request for reconsideration from Charcoal Creek, the trial court amended

4

its decision and determined the evidence, unrebutted by English, established that $7,000 was the amount of damages, or restoration value, that would reasonably and fairly compensate Charcoal Creek for the waste and injury English caused by removing the landscaping. Therefore, under RCW 4.24.630, which allows treble damages for claims of waste, English was liable to Charcoal Creek for treble damages in the amount of $21,000.

English filed a motion for attorney fees and costs under the terms of the PSA, seeking $675,975.92. Charcoal Creek sought $12,724 in fees. The trial court denied both requests, concluding that there was no prevailing or substantially prevailing party.

English appeals only the trial court's denial of attorney fees and costs.

## DISCUSSION

"Under Washington law, a trial court may grant attorney fees only if the request is based on a statute, a contract, or a recognized ground in equity." Gander v. Yeager, 167 Wn. App. 638, 645, 282 P.3d 1100 (2012). We apply a two-part review to awards or denials of attorney fees: we review the legal basis for the award de novo, while we review the amount of the award for abuse of discretion. Id. at 647. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. Sw. Suburban Sewer Dist. v. Fish, 17 Wn. App. 2d 833, 838, 488 P.3d 839 (2021). A decision is based on untenable grounds or untenable reasons if the trial court applies the wrong legal standard or relies on unsupported facts. Mayer

v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006). "[T]he court's decision is 'manifestly unreasonable' if 'the court, despite applying the correct legal standard to the supported facts, adopts a view that no reasonable person would take.' " Mayer, 156 Wn.2d at 684 (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)). "The trial court must create an adequate record for review of fee award decisions, which means in part that the record must show a tenable basis for the award." Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.), 119 Wn. App. 665, 690, 82 P.3d 1199 (2004).

Here, the PSA provides a basis for attorney fees: "if Buyer or Seller institutes suit against the other concerning this Agreement . . . the prevailing party is entitled to reasonable attorneys' fees and expenses." The parties also agree that RCW 4.24.630 provides for fees on successful claims of waste. However, the trial court denied the parties' motions to award fees based on its application of the "major issues" doctrine. The court reasoned, "In sum, Charcoal Creek prevailed on the major issues of English's unjust enrichment claim ($356,500), English's primary contract-damages theory ($245,000), and [its] waste counterclaim. English prevailed on the major issue of contract liability." Therefore, the court concluded, neither party qualified as the prevailing party entitled to fees. As an additional ground for denial, the court determined that it could not segregate fees for English's successful breach of contract claim from his unsuccessful claims for unjust enrichment and timber trespass based on the billing records provided. We address each issue in turn.

I.    Prevailing Party

"As a general rule, a prevailing party is one who receives an affirmative judgment in its favor." Cornish Coll. of the Arts v. 1000 Virginia Ltd. P'ship, 158 Wn. App. 203, 231, 242 P.3d 1 (2010). The issue of who is the prevailing party is a mixed question of law and fact to be reviewed under the error of law standard. Eagle Point Condo. Owners Ass'n v. Coy, 102 Wn. App. 697, 706, 9 P.3d 898 (2000). Analytically, resolving a mixed question of law and fact requires establishing the relevant facts, determining the applicable law, and then applying that law to the facts. Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 403, 858 P.2d 494 (1993).

"In a contract dispute where 'several distinct and severable claims' are at issue, the determination of the prevailing party may be subjective and difficult to assess." Cornish Coll. of the Arts, 158 Wn. App. at 232 (quoting Marassi v. Lau, 71 Wn. App. 912, 917, 859 P.2d 605 (1993), abrogated on other grounds by Wachovia SBA Lending, Inc. v. Kraft, 165 Wn.2d 481, 200 P.3d 683 (2009)). If neither party wholly prevails, then the substantially prevailing party prevails for the purposes of the fee award. Marassi, 71 Wn. App. at 916. If both parties prevail on major issues, an attorney fee award is not appropriate. Id. The parties refer to this as the "major issues doctrine."

The trial court applied the major issues doctrine and concluded that neither party should receive attorney fees. The trial court found that both Charcoal Creek and English prevailed on major issues in two distinct ways. First,

7

the court determined "[t]his entire lawsuit is one 'concerning th[e] Agreement.' And under the Agreement's plain language, the parties agreed to an award of fees and costs to a party that prevails in the lawsuit that was instituted," and "all the parties' claims concern, and flow out of, the Agreement." Because Charcoal Creek prevailed on the waste and timber trespass claims and English prevailed on the breach of contract, the court determined that both parties prevailed on major issues in the lawsuit. Alternatively, the trial court looked at only the breach of contract claim and found that English asserted "two very different theories of recovery"—diminution of value and replacement cost—but prevailed only on one. English challenges both of the court's alternative approaches. We examine each separately.

## A. Claims Concerning the Contract

English argues the trial court erroneously determined that all claims and counterclaims concerned the PSA because common law and statutory-based claims are not "on the contract." According to English, the major issues doctrine does not apply because his breach of contract claim is the only one "on the contract." Charcoal Creek contends that "concerning the contract" has a broader meaning such that a dispute can concern an agreement without implicating a specific provision of the contract and the trial court properly concluded that the major issues doctrine applied and precluded any award of attorney fees. We agree with English that his claim that Charcoal Creek breached the PSA is the only claim that allows for attorney fees and costs under the terms of that contract.

A prevailing party may recover attorney fees under a contractual fee shifting provision "only if the party brings a 'claim on the contract,' that is, only if a party seeks to recover under a specific contractual provision." Boguch v. Landover Corp., 153 Wn. App. 595, 615, 224 P.3d 795 (2009). An action is on a contract for purposes of a contractual attorney fees provision if the action arose out of the contract and if the contract is central to the dispute. Seattle-First Nat'l Bank v. Washington Ins. Guar. Ass'n, 116 Wn.2d 398, 413, 804 P.2d 1263 (1991). A breach of duty based on statute or common law is not on the contract "even if the duty would not exist in the absence of a contractual relationship." Boguch, 153 Wn. App. at 615. "Stated differently, an action 'sounds in contract when the act complained of is a breach of a specific term of the contract, without reference to the legal duties imposed by law on that relationship.' " Boguch, 153 Wn. App. at 616 (quoting G.W. Constr. Corp. v. Prof'l Serv. Indus., Inc., 70 Wn. App. 360, 364, 853 P.2d 484 (1993)).

English's breach of contract claim was based on language in the PSA including "shrubs, plants and trees planted in the ground" as items included in the sale of the property which was to be maintained "in its present condition, normal wear and tear excepted, until the Buyer is provided possession." The other claims of timber trespass, unjust enrichment, negligent or intentional misrepresentation, and waste are based on non-contractual theories and do not pertain to specific provisions of the PSA. Likewise, Charcoal Creek's waste claim

was not grounded on a specific provision of the PSA and is based on conduct that occurred significantly after the closing on the property.

Charcoal Creek argues that the use of the language "concerning the Agreement" in the PSA extends its application to disputes even if they do not implicate a specific provision. In support, Charcoal Creek cites Brooks v. Nord, Tr. of David I. Huffman & Lois P. Huffman Living Tr. Dated Sept. 22, 2006, 16 Wn. App. 2d 441, 446, 480 P.3d 1167 (2021), which construed a similarly worded fee provision in a residential purchase and sale agreement that awarded fees in any dispute "concerning" the agreement. In that case, the trial court denied attorney fees under the agreement where the seller successfully defended a suit for misrepresentation and failure to disclose. Id. at 445. On appeal, the court determined the seller was owed attorney fees because the claims arose out of the contract, explaining that " '[c]oncerning' is broader than 'part of;' a dispute can concern the agreement even if a specific provision of the agreement is not implicated. Such is the case here because the action was 'on [the] contract.' " Id. at 446.

However, Brooks involved a tort action, and "in an action in tort, the prevailing party is entitled to attorney fees when the action is based on a contract containing an attorney fee provision." 16 Wn. App. 2d at 446; see also Borish v. Russell, 155 Wn. App. 892, 907, 230 P.3d 646 (2010) (attorney fees recoverable for prevailing party in a tort claim arising from the contract); Brown v. Johnson, 109 Wn. App. 56, 59, 34 P.3d 1233 (2001) (suit for misrepresentation

arose out of the parties' agreement and the purchase and sale agreement was central to the claim); Stieneke v. Russi, 145 Wn. App. 544, 571, 190 P.3d 60 (2008) (fraud claims were on the contract and allowed for fees). English's only alleged tort claims—negligent or intentional misrepresentation—were abandoned by the time of trial.

English's remaining claims of unjust enrichment and timber trespass and Charcoal Creek's waste claim are not based on the PSA for purposes of applying the major issues doctrine. Unjust enrichment is "the method of recovery for the value of the benefit retained absent any contractual relationship" based in equity. Young v. Young, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008). And as an equitable remedy that exists when a contract does not, the unjust enrichment claim cannot concern the PSA. Id.

English's claim for timber trespass and Charcoal Creek's waste counterclaim are statutory, arising under RCW 64.12.030 and RCW 4.24.630 respectively. The timber trespass claim pertained only to trees removed after closing, when English would have owned the land. RCW 64.12.030. Because the sale closed, the provisions of the PSA merged into the deed, as "[e]xecution, delivery, and acceptance of the deed becomes the final expression of the parties' contract and therefore subsumes all prior agreements." Barber v. Peringer, 75 Wn. App. 248, 251, 877 P.2d 223 (1994). The timber trespass claim could not concern an agreement that no longer existed at the time of the conduct at issue. The same reasoning applies to Charcoal Creek's waste counterclaim. According

to the trial court, "Because the waste counterclaim involved an unresolved boundary line dispute—which itself stemmed from the property sale under the Agreement—the waste counterclaim was a claim concerning the Agreement." However, any property line dispute arose after closing and, therefore, concerns the deed rather than the PSA. See Barber, 75 Wn. App. at 248 (acceptance of deed subsumes all prior agreements).

The only claim concerning the PSA is English's breach of contract. The court erred in applying the "major issues doctrine" to determine English was not the prevailing party on issues "concerning the agreement" because Charcoal Creek also prevailed in defending against unjust enrichment and timber trespass, and prevailed in its waste counterclaim. English was the prevailing party on its breach of contract claim.

### B. Different Contract Damages Theories as "Major Issues"

According to the trial court, because English asserted diminution of value and replacement cost as theories of recovery and prevailed only in proving replacement damages, the major issues doctrine applies to preclude attorney fees. English contends he prevailed on the claim even though he was awarded a smaller damage award than he sought. Charcoal Creek argues English explicitly sought two distinct remedies and won only one, so the court's application of the major issues doctrine was appropriate. We disagree with the trial court's

12

characterization of English's alternative damages theories as separate issues for the purposes of the major issues doctrine.

The major issues doctrine applies when a contract dispute has "several distinct and severable claims." Marassi, 71 Wn. App. at 917. Here, the parties do not dispute that English litigated a single breach of contract claim with two possible theories of recovery—diminution of value and replacement cost of the trees. Because English raised only one breach of contract *claim*, there are not multiple, distinct claims to support application of the major issues doctrine. The fact that he was awarded damages of $47,000 rather than $245,000 does not change his status as prevailing party on that single claim. "A party need not recover its entire claim in order to be considered the prevailing party." Silverdale Hotel Assocs. v. Lomas & Nettleton Co., 36 Wn. App. 762, 774, 677 P.2d 773 (1984) (defendant was not the prevailing party where damages award was less than plaintiff requested); see Taliesen Corp. v. Razore Land Co., 135 Wn. App. 106, 144 P.3d 1185 (2006) (while the defendant was successful in reducing the compensable costs, the judgment was entered for plaintiff who was the prevailing party and, therefore, entitled to attorney fees).

The cases cited by the trial court also do not support applying the major issues doctrine to different damages theories for the single contract claim in this case. In Rowe v. Floyd, 29 Wn. App. 532, 629 P.2d 925 (1981), the sellers of real estate brought an action to forfeit the interests of the buyers who failed to make a payment under the terms of the contract, and the buyers "asserted as an

affirmative defense that they were not in default, and, in a counterclaim, they asked for their reasonable attorney's fees in the event they prevailed." Id. at 533. The trial court found that the buyers were entitled to a reduction in their payment on the installment under a disaster clause in the contract, set a deadline for the buyers' payment, and dismissed the complaint for forfeiture. Id. While a single claim for forfeiture was the source of the litigation, the trial court was required to address several major issues—validity of the contract, impact of the disaster clause, necessity of forfeiture, and calculation of buyer's payment—to reach its final decision on the contract claim. Id. at 533-35. The appellate court agreed that both parties prevailed on major issues—the buyers successfully resisted the forfeiture and the seller recovered the money owed under the contract—and affirmed the trial court's order declining to award fees to either party. 29 Wn. App. at 534-35.[2]

Tallman v. Durussel, 44 Wn. App. 181, 183, 721 P.2d 985 (1986), also cited by the trial court, addressed attorney fees in the context of an award on appeal. Id. at 189. Tallman concerned the second of two lawsuits between

---

[2]This court has rejected application of Rowe and the "major issues doctrine" where "multiple distinct and severable contract claims are at issue." Transpac Dev., Inc. v. Oh, 132 Wn. App. 212, 218, 130 P.3d 892 (2006) (quoting Marassi, 71 Wn. App. at 917). Transpac involved a lease termination based on an invalid sublease where "each party avoided the remedies the other party sought," with Oh successfully defending against a claim of unpaid rent, and Transpac successfully defending against the counterclaim for remodeling expenses and loss of subtenant rent. 132 Wn. App. at 217-20. Because there were multiple distinct and severable claims from a single lease agreement, and both parties prevailed in part, a proportional fee award was appropriate. Id. at 219-20. As an alternative ground for reversing the trial court's decision, English argues for application of this proportionality approach. However, the parties here allege, and prevail on, claims with two different sources of attorney fee recovery—the PSA and, for the waste claim, RCW 4.24.630—rather than a single contract. Unlike in Transpac, they do not have multiple distinct claims under a single contract.

Tallman and investor Durussel, who entered into a promissory note payable to Tallman. Id. at 182-83. In the first lawsuit, Durussel sued Tallman for rescission of the contract, fraud, and misrepresentation, but the jury found for Tallman. Id. at 183. Tallman then sued Durussel for the balance of a promissory note. Id. The trial court granted partial summary judgment to Tallman, determining that the installments in default at the time of the prior action should have been raised as compulsory counterclaims and were barred, but the installments that came due after were not barred. Id. On appeal, we concluded the cause of action on the promissory note was not barred in its entirety, as Durussel had argued, but also that the relation-back doctrine did not apply to save the barred installments, as Tallman had argued. Id. at 185-86. Because each of the parties prevailed on one of the major issues on appeal, there was no prevailing party for the purposes of contractual attorney fees. Id. at 189. Neither Rowe nor Tallman characterized different damages theories on a single claim as separate "major issues" that determine who is the prevailing party.

Here, the trial court concluded that Charcoal Creek breached the PSA agreement and entered judgment for English in the amount of $47,000. As a result, English received an affirmative judgment in his favor on the breach of contract claim. The theory of damages and lower recovery than sought does not impact English's status as prevailing party for the purposes of attorney fees

15

under the PSA. Thus, the trial court abused its discretion by applying the major issues doctrine and denying English's fees for breach of contract.[3]

### C. Fees for Charcoal Creek's Waste Claim

Although Charcoal Creek did not appeal, our ruling regarding the trial court's denial of English's fees for breach of contract on the grounds above also reverses the trial court's denial of Charcoal Creek's motion for attorney fees for the successful waste claim. RCW 4.24.630(1) includes liability for reasonable attorney fees and litigation-related costs to the injured party in a successful waste claim. Here, the trial court denied Charcoal Creek's statutory fees, as "subsumed by the attorney-fees provision in the parties' Agreement," because the counterclaim for waste was part of the lawsuit "concerning th[e] Agreement" and was one of the major issues on which Charcoal Creek prevailed that made fee recovery inappropriate for either party.

However, English's breach of contract claim is the only claim concerning the PSA. The trial court's conclusion that the availability of statutory attorney fees is preempted by the PSA was an abuse of discretion. Moreover, the waste claim concerns independent actions English took months after signing the PSA and

---

[3] Charcoal Creek argues that English's "rejection of several make-whole offers could be an independent alternative ground for affirming the trial court." Charcoal Creek cites to <u>Richter v. Trimberger</u>, 50 Wn. App. 780, 784, 750 P.2d 1279 (1988), and <u>Eagle Point</u>, 102 Wn. App. at 707. However, in <u>Richter</u>, the court noted the "peculiar nature of this case," in which there had been a tender of agreed funds. 50 Wn. App. at 784. <u>Eagle Point</u> involved the specific rule for attorney fees when a party does not accept an offer of judgment under CR 68. 102 Wn. App. at 707. "If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." CR 68. The settlement negotiations between Charcoal Creek and English did not include a CR 68 offer of judgment or tender of funds. The failed settlement negotiations do not provide grounds for denial of attorney fees.

closing on the property. As a result, Charcoal Creek is entitled to fees under RCW 4.24.630 as the injured party. Upon remand the trial court should determine the statutory fee award to Charcoal Creek.

II. Segregation of Fees

As discussed above, the terms of the PSA allow for recovery of attorney fees only on English's breach of contract claim. Where attorney fees are recoverable for some of a party's claims, the award must segregate the time spent on issues for which fees are authorized from time spent on other issues. Mayer v. City of Seattle, 102 Wn. App. 66, 79-80, 10 P.3d 408 (2000). Segregation is required even if the claims overlap or are interrelated. Loeffelholz, 119 Wn. App. at 690. However, if "the trial court finds the claims to be so related that no reasonable segregation of successful and unsuccessful claims can be made, there need be no segregation of attorney fees." Hume v. Am. Disposal Co., 124 Wn.2d 656, 673, 880 P.2d 988 (1994).

The trial court determined that English's "attorneys' billing records do not allow for segregation." In reaching that decision, the court noted that English's counsel stated they had "removed fees and costs associated with Plaintiff's unjust enrichment claim and the claim for timber trespass," but the records still included multiple references to English's failed claims of unjust enrichment and timber trespass for which he could not recover attorney fees. The court also cited the billing records for time spent on "summary judgment," even though Charcoal Creek's summary judgment motion included the unjust enrichment, timber

17

trespass, waste, and negligence claims. Finally, the court pointed to the billing for discovery, mediation, and trial, stating "scores of time entries on these topics are not specific to a particular claim and do not allow for segregation as to specific claims." The court concluded that English had not provided an evidentiary record that would allow the court to award fees on the breach of contract claim.

The trial court reasoned that English had failed to satisfy his burden to adequately segregate fees as to the specific claims, not that segregation was impossible. In such cases, the trial court abuses its discretion. Loeffelholz, 119 Wn. App. at 692. For example, in Loeffelholz, the trial court twice demanded additional information to segregate the requested fees and made statements about the inadequate segregation in the records before ultimately concluding it was "unable" to segregate the fees. 119 Wn. App. 691-92. The reviewing court disagreed with this conclusion, because the trial court "was saying that the defendants had failed to furnish the necessary information, not that segregation was not reasonably possible." Id. at 692 (emphasis omitted). The trial court was required to segregate the time spent on different issues on the record, and failure to do so was an abuse of discretion. Id. As a result, the award "was arbitrary and not supported by the record." Id. On remand, the trial court was to require the party to segregate the fees for the claims with various possible outcomes:

> If the defendants fail or refuse to segregate, the trial court shall deny fees. If the defendants segregate in a way that the trial court finds partly but not wholly persuasive, the trial court may at its option "independently decide what represents a reasonable amount of attorney fees" . . . provided that it shows, on the record, a rational basis for its decision.

Loeffelholz, 119 Wn. App. at 692 (quoting Mayer, 102 Wn. App. at 79) (emphasis omitted).

As in Loeffelholz, the trial court here did not base its denial of fees on a determination that segregation was not "reasonably possible." Rather, the court stated, "Even if it were appropriate to award fees to English on his breach-of-contract claim alone (it is not), he has not provided an evidentiary record that would allow the Court to do so." The trial court must determine whether they are segregable, not merely that the records provided do not allow for segregation. The trial court may exercise its discretion to determine the number of hours reasonably expended in the litigation, which includes discounting for hours spent on "unsuccessful claims, duplicated effort, or otherwise unproductive time." Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597, 675 P.2d 193 (1983). If a party "segregate[s] in way that is partly but not wholly persuasive," the court has discretion to decide what is a reasonable amount of fees, provided it shows on the record a basis for its decision. Loeffelholz, 119 Wn. App. at 692-93. On remand, the trial court should first determine whether segregation was possible and, then, whether the provided billing records allow such segregation.

III.     Fees on Appeal

Both parties request fees on appeal under the terms of the PSA and RAP 18.1. "A contract that provides for attorney fees at trial also supports such an award on appeal." Atlas Supply, Inc. v. Realm, Inc., 170 Wn. App. 234, 241, 287

P.3d 606 (2012). As the prevailing party to this appeal, English is entitled to his fees on appeal subject to compliance with RAP 18.1(d).

CONCLUSION

English and Charcoal Creek were each entitled to attorney fees, as English was the prevailing party under the PSA and Charcoal Creek was the prevailing party under RCW 4.24.630(1). We reverse and remand to the trial court for additional proceedings to assess whether English's attorneys' time is segregable and whether the record supports the reasonableness of the fee requests.

Chung, J.

WE CONCUR:

Feldman, J.

Coburn, J.