# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of: )
) DIVISION ONE
JOHN WILLIAM LAIDLAW, )
) No. 75876-4-I
      Appellant, )
) PUBLISHED OPINION
     and )
)
DANAE DIANA LAIDLAW, )
now known as DANAE DIANA )
ZOELLIN, )
)
      Respondent. ) FILED: February 5, 2018
)

DWYER, J. — In this domestic relations relocation action, John Laidlaw

appeals from the trial court's orders entering a parenting plan and ordering

Laidlaw to pay some of Danae Zoellin's attorney fees and costs. On appeal,

Laidlaw contends that the trial court erred by reducing his residential time with his

daughter. Laidlaw also contends that the trial court erred by ordering him to pay

some of Danae Zoellin's attorney fees and costs and by ordering wage

garnishment in the event that he defaulted on that obligation. Finding no error in

the issues warranting review, we affirm.

I

John Laidlaw and Danae Zoellin were married on January 3, 2009. Together the parties have one child—T.L. Following a trial, Laidlaw and Zoellin were divorced on August 2, 2013. Judge Sean O'Donnell entered an order concluding that Laidlaw had engaged in a series of acts that constituted domestic violence and had engaged in abusive use of conflict. Judge O'Donnell also entered a parenting plan pursuant to the marital dissolution. The parenting plan incorporated the findings and conclusions concerning domestic violence as a basis for certain restrictions imposed against Laidlaw.[1] Judge O'Donnell also ordered Laidlaw to pay $30,000 of Zoellin's attorney fees.[2]

Laidlaw and Zoellin lived in Issaquah when T.L. was born. Prior to the dissolution of their marriage, Zoellin entered an address confidentiality program, moving multiple times out of fear for her safety. At the time the final dissolution order was entered, Zoellin lived in Issaquah. In October 2014, Zoellin began a new job in Seattle. Zoellin commuted from Issaquah to Seattle for one and a half years before giving notice of her intent to relocate with the child in Seattle.

Laidlaw opposed the relocation. In March 2016, Laidlaw filed a motion objecting to the relocation and seeking to modify the 2013 parenting plan. Laidlaw's proposed parenting plan removed the restrictions contained in the 2013 parenting plan and made him the primary residential parent. In April 2016, the

---

[1] The 2013 parenting plan required Laidlaw to complete certain counseling and treatment requirements prior to having unsupervised visitation with T.L. The 2013 parenting plan also designated Zoellin as the sole decision-maker.

[2] These fees were never paid. The fee obligation was discharged in Laidlaw's subsequent bankruptcy.

trial court entered an order permitting Zoellin to temporarily relocate with the child to Seattle pending trial. Zoellin moved to Seattle in July 2016.

Following trial, the trial court entered an order permitting Zoellin to relocate with T.L.[3] The trial court found that (1) there were no agreements between the parents concerning moving with the child, (2) relocation would not affect the relationship between the child and either parent, (3) the history of domestic violence continued to affect the parents' relationship, and (4) permitting relocation would not impact the child's future, quality of life, resources or opportunities as a result of the move. The trial court also found that Laidlaw had failed to rebut the presumption that the benefit of the change to the child and the relocating parent outweighed the detrimental effect of the relocation. Finally, the trial court found that, in light of the relocation, there were valid reasons to alter the parenting plan and that such changes were in the best interest of the child.

After considering the financial affidavits and declarations submitted by both parties, the trial court found that Zoellin needed financial assistance to pay her attorney fees and costs and that Laidlaw had the ability to pay those fees and costs. The trial court ordered Laidlaw to pay $15,360[4] of Zoellin's attorney fees and costs after finding that such an amount was reasonable. The trial court also ordered the Washington State Division of Child Support to collect $1,000 each month via immediate wage garnishment should Laidlaw fail to satisfy the judgment within 90 days.

---

[3] Laidlaw does not appeal this order.
[4] The trial court ordered Laidlaw to pay $360 of Zoellin's costs in the judgment summary. Elsewhere in the judgment, in paragraph 11, the court listed $350 as the amount of costs to be paid. Neither party has assigned error to the discrepancy.

- 3 -

The parenting plan entered by the trial court incorporated the findings of domestic violence and abusive use of conflict outlined in the dissolution and 2013 parenting plan.[5] As with the 2013 parenting plan, the 2016 parenting plan contained detailed residential provisions concerning the residential time schedule. In light of the relocation, the total residential time allocated to Laidlaw in the 2016 parenting plan is less than the total time allocated in the 2013 parenting plan.[6] Laidlaw appeals from the entry of the 2016 parenting plan and related orders.

## II

Laidlaw first contends that the trial court erred by entering the 2016 parenting plan. This is so, he asserts, because the trial court failed to make any findings to support its decision to alter the residential schedule. We disagree.

## A

We review a trial court's decision concerning the welfare of children for an abuse of discretion. In re Marriage of Horner, 151 Wn.2d 884, 893, 93 P.3d 124 (2004). A court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds or reasons. Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 668-69, 230 P.3d 583 (2010). "A court's decision is

---

[5] Because Laidlaw had completed treatment by this time, the 2016 parenting plan contained no restrictions on Laidlaw's visitation.

[6] For example, the 2013 parenting plan originally granted Laidlaw residential care during the school year every other weekend and, on opposite weeks, after school Wednesday through after school Friday. Conversely, the 2016 parenting plan eliminated the mid-week overnights and provided Laidlaw with a few hours on alternating Wednesdays and overnight care every other weekend. However, the 2016 parenting plan *increased* the residential time granted to Laidlaw during the summers—allowing him to care for T.L. every other week rather than every other weekend and alternating Wednesdays through Fridays. Nevertheless, the practical effect of the alterations resulted in a reduction of the total amount of residential time allocated to Laidlaw.

manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997). Unchallenged findings of fact are verities on appeal and unchallenged conclusions of law become the law of the case. Rush v. Blackburn, 190 Wn. App. 945, 956, 361 P.3d 217 (2015).

The child relocation act (CRA), RCW 26.09.405-.560, provides certain notice requirements and standards for changing the primary residence of a child who is the subject of a court order regarding residential time. "If a person entitled to residential time or visitation objects to a child's relocation, the person seeking to move the child may not relocate the child without court approval." In re Marriage of McNaught, 189 Wn. App. 545, 553, 359 P.3d 811 (2015). The CRA imposes a rebuttable presumption that relocation will be permitted and requires trial courts to consider 11 factors when determining whether the detrimental effects of relocation outweigh the benefits to both the child and the parent seeking to relocate. RCW 26.09.520. These considerations include any prior agreements between the parents, the effect of the relocation on the child's physical, educational, and emotional development, the quality of life and opportunities available to the child before and after relocation, and any alternatives to relocation. RCW 26.09.520(2), (3), (6), (7), (9).

A court order permitting or restraining the relocation of a child may necessitate modification of an existing parenting plan. A trial court's ability to modify a parenting plan is controlled by statute. McDevitt v. Davis, 181 Wn. App. 765, 769, 326 P.3d 865 (2014).

RCW 26.09.260 sets forth the predicates for modification of a parenting plan. Pursuant to that statute, modification is generally prohibited absent a finding that "a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child." RCW 26.09.260(1). In addition, modification of a parenting plan generally requires one of the following: (a) the assent of both parents, (b) the integration of the child into the family of the petitioner with the consent of the other parent, (c) a finding that the child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child, or (d) parental noncompliance with the residential time provisions in the parenting plan that has resulted in the nonmoving parent being held in contempt of court at least twice within three years. RCW 26.09.260(2).

But an exception to the statutory predicates set forth in RCW 26.09.260(1) and (2) exists when modification is based on a court's order permitting relocation. Modification of a parenting plan based on relocation is governed by RCW 26.09.260(6). That statute provides:

> The court may order adjustments to the residential aspects of a parenting plan pursuant to a proceeding to permit or restrain a

relocation of the child. The person objecting to the relocation of the child or the relocating person's proposed revised residential schedule may file a petition to modify the parenting plan, including a change of the residence in which the child resides the majority of the time, without a showing of adequate cause other than the proposed relocation itself. A hearing to determine adequate cause for modification shall not be required so long as the request for relocation of the child is being pursued. In making a determination of a modification pursuant to relocation of the child, the court shall first determine whether to permit or restrain the relocation of the child using the procedures and standards provided in RCW 26.09.405 through 26.09.560. *Following that determination, the court shall determine what modification pursuant to relocation should be made, if any, to the parenting plan or custody order or visitation order.*

RCW 26.09.260(6) (emphasis added).

"[T]he relocation petition itself is a basis for modifying a parenting plan." Davis, 181 Wn. App. at 771. Indeed, "[r]elocations involve new time and distance factors that will inevitably require dramatic changes to a parenting plan. . . . A trial court decision is not based on untenable grounds simply because it favors one parent against another." In re Marriage of Fahey, 164 Wn. App. 42, 68, 262 P.3d 128 (2011). "[A] trial court need not support each term of a parenting plan with specific factual findings. Rather, a trial court has broad discretion to structure a parenting plan, guided by the provisions of the applicable statutes." McNaught, 189 Wn. App. at 563.

B

The trial court entered numerous factual findings supporting its order permitting relocation, including that relocation was in the best interest of the child. The trial court also found that, in light of the relocation, there were valid reasons to modify the 2013 parenting plan. The trial court noted that the modified

parenting plan did not change the parent with whom T.L. resided the majority of the time. The trial court found that Laidlaw had not rebutted the presumption that the benefits of relocation outweighed its detrimental effects.

Laidlaw does not assign error to the trial court's order permitting relocation. Neither does Laidlaw assign error to any factual findings or conclusions in that order. Rather, Laidlaw assigns error to the reduction in residential time provided to him during the school year in the modified parenting plan, asserting that the trial court failed to support that change with factual findings.

Laidlaw first characterizes the reduction in residential time as a "restriction" in the residential schedule and asserts that the trial court failed to find that the restriction was necessary or required to protect the child from harm. Laidlaw's assertion is puzzling. The modified parenting plan explicitly contains "no restrictions." Rather, the trial court's finding of domestic violence—which Laidlaw does not challenge on appeal—simply precludes him from making major decisions concerning T.L.'s school, health care, and child care. The change to the residential schedule in the modified parenting plan is not a restriction.

Laidlaw next contends that the trial court should have made findings concerning whether the proposed changes to the residential schedule were necessary consequences of the relocation, whether the changes were in the best interest of the child, and whether the changes were necessary to protect the child from physical, mental, or emotional harm. In support of these contentions, Laidlaw relies on the general predicates for modification of a permanent

parenting plan, RCW 26.09.260(2), as well as the general policy considerations behind dissolution proceedings, RCW 26.09.002.[7]

As a preliminary matter, none of the findings sought by Laidlaw are required by the plain language of the statute. Rather, all of the necessary findings pertaining to the impact of relocation on the child were appropriately made in the trial court's unchallenged order permitting relocation. See McNaught, 189 Wn. App. at 553 (discussing findings required by the CRA). Once the trial court entered its order permitting relocation, it was then required to "determine what modification pursuant to relocation should be made, if any, to the parenting plan." RCW 26.09.260(6). It is the decision to authorize the relocation that provides the basis for modification. Davis, 181 Wn. App. at 771. It does not follow that, after making the necessary findings and entering an order permitting relocation, the trial court could be left without the authority to modify the residential schedule absent an additional finding that the present residential schedule is harmful to the child.[8]

Moreover, Laidlaw's assertion—that the modification statute places additional burdens on parents seeking to relocate with a child—ignores the straightforward and comprehensive process set forth by the CRA and RCW 26.09.260(6). Prior to the enactment of the CRA, a parent's ability to unilaterally

[7] RCW 26.09.002 provides, in pertinent part, that the best interests of the child are "ordinarily served when the existing pattern of interaction between a parent and child is altered only to the extent necessitated by the changed relationship of the parents or as required to protect the child from physical, mental, or emotional harm."

[8] Laidlaw directs our attention to a recent unpublished decision from a different division of this court that supports his contrary position. That opinion cites no authority for its application of RCW 26.09.260(2) to modifications entered pursuant to relocation. We do not find that opinion persuasive.

- 9 -

relocate with a child was heavily litigated and fraught with uncertainty. See 2000 FINAL LEGISLATIVE REPORT, 56th Wash. Leg., at 78 ("Washington's laws do not explicitly address when a parent may or may not relocate a child and whether the parent must notify the other parent before relocation occurs."). In 1997, our Supreme Court held that trial courts lacked the authority to restrict a parent from unilaterally relocating with a child absent a limiting factor that warranted a restriction in the residential schedule. Littlefield, 133 Wn.2d at 56-57. In 1999, our Supreme Court held that a parent could seek a "minor" modification to the residential schedule, pursuant to RCW 26.09.260(5), after demonstrating a bona fide reason for the relocation. In re Marriage of Pape, 139 Wn.2d 694, 696, 989 P.2d 1120 (1999). As a corollary, a parent could object to a proposed relocation by showing that (1) no bona fide reason existed for the move, or (2) the move would be "detrimental to the child and the harm suffered will be beyond the normal distress a child suffers due to travel, infrequent contact with a parent, or other hardships which predictably result from a move following dissolution." Pape, 139 Wn.2d at 696.

By enacting the CRA, our legislature sought to supersede both Littlefield and Pape and provide trial courts with clear authority to permit or restrain the relocation of a child. It did so by establishing the statutory presumption that relocation would be permitted and by creating the 11 factors for trial courts to weigh when considering a parent's objection to relocation. See 2000 FINAL LEGISLATIVE REPORT, 56th Wash. Leg., at 78. Many of the considerations weighed by trial courts during relocation proceedings are duplicative of the

general predicates to modification of a parenting plan. Accordingly, parental plan modifications made pursuant to relocation are exempted from those general predicates. RCW 26.09.260(1), (6).

Finally, Laidlaw complains that the trial court failed to support its alterations to the residential schedule with findings establishing that each change was necessary. But, again, there is no such requirement. Alterations to the residential schedule are a necessary byproduct of the trial court's order permitting relocation. Such changes are expressly authorized by statute. RCW 26.09.260(6). There is no requirement for trial courts to make individual factual findings justifying each change made to a residential schedule in light of a relocation order.

There was no error.

III

A

Laidlaw next contends that the trial court erred by ordering him to pay some of Zoellin's attorney fees and costs. This is so, he asserts, because the trial court failed to make any findings to support such an award.

We review an award of attorney fees and costs for an abuse of discretion. Tribble v. Allstate Prop. & Cas. Ins. Co., 134 Wn. App. 163, 170, 139 P.3d 373 (2006). A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. Littlefield, 133 Wn.2d at 46-47. "To withstand appeal, a fee award must be accompanied by findings of fact and conclusions of law to establish a record

adequate for review." Eagle Point Condo. Owners Ass'n v. Coy, 102 Wn. App. 697, 715, 9 P.3d 898 (2000). Pursuant to RCW 26.09.140, a trial court may award attorney fees after consideration of the financial resources of each party.

Here, the trial court entered findings and conclusions regarding attorney fees and costs in its order permitting relocation. The trial court found that "Danae Zoellin incurred fees and costs, and needs help to pay those fees and costs. John Laidlaw has the ability to help pay fees and costs and should be ordered to pay the amount as listed in the Money Judgment in section 12 below. The court finds that the amount ordered is reasonable." The trial court awarded Zoellin $15,000 in fees and $360 in costs.

Laidlaw does not assign error to the trial court's order permitting relocation. Neither does Laidlaw assign error to the factual findings in that order. Rather, Laidlaw attempts to characterize the trial court's findings as legal conclusions that lack factual support. His attempt fails.

The trial court's decision concerning attorney fees and costs was made after considering the financial affidavits and declarations submitted by both parties. The trial court also considered the testimony of the parties during trial—testimony that directly addressed financial need and ability to pay. The trial court then made factual findings that are supported by the record. Consideration of the financial need and ability to pay of the parties in light of the financial affidavits, declarations, and trial testimony is sufficient to support an award of attorney fees. McNaught, 189 Wn. App. at 568-69.

There was no abuse of discretion.

B

Laidlaw also contends that the trial court erred by ordering the Division of Child Support to collect $1,000 per month from Laidlaw as a support obligation in the event that he failed to pay the judgment against him within 90 days. The parties agree that Laidlaw has paid the principal balance of the judgment entered against him and that, as a result, his wages will not be garnished.

"A case is moot if a court can no longer provide effective relief." State v. Gentry, 125 Wn.2d 570, 616, 888 P.2d 1105 (1995). Appellate courts avoid considering moot issues in order "to avoid the danger of an erroneous decision caused by the failure of parties, who no longer have an existing interest in the outcome of a case, to zealously advocate their position." Orwick v. City of Seattle, 103 Wn.2d 249, 253, 692 P.2d 793 (1984).

Here, there is no effective relief that we could provide concerning this issue. Laidlaw has paid the principal balance due to Zoellin and concedes that his wages will not be garnished as a result. Moreover, the record reveals that the Division of Child Support refused to garnish Laidlaw's wages as a support obligation.

The issue is moot and need not be further addressed.

C

Finally, Zoellin seeks an award of appellate fees pursuant to RCW 26.09.140[9] and also on the basis of Laidlaw's asserted intransigence.

---

[9] That statute provides, "[u]pon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." RCW 26.09.140.

Having considered the arguments set forth by both parties and the record before us, we exercise our discretion and decline to award appellate fees to either party.

Affirmed.

Duyn, J.

We concur:

Mann, J.

Spearman, J.